UNITED STATES of America,
Plaintiff–Appellee,

v.

James Robert HERNANDEZ,
Defendant–Appellant.

No. 93–50102.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 8, 1994.

Decided June 24, 1994.

As Amended Sept. 21, 1994.

Before: WIGGINS and T.G. NELSON, Circuit Judges, and EDWARD C. REED, Jr.,* District Judge.

Opinion by Judge T.G. NELSON.

T.G. NELSON, Circuit Judge:

## I.

### OVERVIEW

James Robert Hernandez (Hernandez) appeals his conviction under 18 U.S.C. § 922(g)(1) for being a felon in possession of a firearm. He makes several arguments on appeal including that the district court erred by denying his motion to suppress; that it abused its discretion by allowing the jury a transcript of a witness's testimony during deliberation; and that there was insufficient evidence to convict him because his stipulation to a prior felony was not sufficient.[1] We hold that the district court did not err in denying Hernandez's motion to suppress evidence and that the stipulation to his prior felony conviction was sufficient to fulfill an element of § 922(g)(1). However, we reverse on the grounds that the district court abused its discretion by allowing the jury to have a transcript in the jury room during deliberation without taking adequate precautions to avoid undue emphasis.

David J. Cohen, Cohen, Hubachek & Riggs, San Diego, CA, for defendant-appellant.

Steve Miller, Asst. U.S. Atty., San Diego, CA, for plaintiff-appellee.

## II.

### FACTS AND PROCEDURAL HISTORY

Hernandez was indicted by a federal grand jury on one count of being a felon in possession of a firearm with an armed career criminal enhancement in violation of 18 U.S.C. §§ 922(g)(1)[2] and 924(e)(1).

On February 23, 1992, police officers Gregory Sadar (Sadar) and Lee Timmerman

---

* Honorable Edward C. Reed, Jr., Senior U.S. District Judge for the District of Nevada, sitting by designation.

1. Hernandez also argues the Government failed to establish racially-neutral explanations for its preemptory challenges of three jurors pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986). Because we reverse on other grounds, we do not address this issue.

2. Section 922(g)(1) provides:

(g) It shall be unlawful for any person—
(1) who is under indictment for, or has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

. . . . .

to ship or transport any firearm or ammunition in interstate or foreign commerce.
18 U.S.C. § 922(g)(1).

(Timmerman) were taking a domestic violence suspect into custody outside an apartment building. While escorting the domestic violence suspect, Timmerman observed a man dressed in dark clothing jump over a fence into an alley and run to the apartment building's gate. Suspecting illegal activity, Sadar approached the suspect, announced he was a police officer, and stated that he needed to talk to him. As Sadar approached the suspect, Timmerman saw the suspect reach with his right hand to his waistband in a drawing motion. Sadar testified that as he walked towards the suspect, the suspect looked directly at him and then turned and attempted to climb over the gate. Sadar grabbed the suspect, and a brief struggle ensued. The gate burst open; Sadar fell down; and the suspect began running. Sadar took cover behind a pillar, drew his gun, and saw the suspect draw a gun from his waistband. After he drew the gun, the suspect stopped, looked over his shoulder directly at Sadar, and then threw the gun which bounced off a nearby pickup and landed in the grass. The suspect continued to run, jumped over a fence at the end of the apartment complex, and ran down the street. Timmerman broadcast a description of the suspect, and approximately four or five minutes later, two other police officers apprehended Hernandez hiding behind a cinder block wall. At trial, both Sadar and Timmerman identified Hernandez, the defendant, as the suspect.

Prior to trial, Hernandez moved to suppress evidence arguing the police did not have reasonable suspicion to detain him for questioning at the time he was initially approached by Sadar. The district court rejected this argument and denied the motion to suppress.

Also prior to trial, Hernandez and the Government stipulated that Hernandez had been convicted of a felony prior to February 23, 1992, the date of his arrest. The district court clarified that Hernandez understood evidence regarding a prior felony conviction would not be presented to the jury and that through the stipulation he was giving up his right to have the jury determine he had a prior felony. Hernandez indicated that he desired to stipulate to the felony conviction and understood the element would be taken away from the jury.

After trial, during deliberation, the jury requested by note to hear Sadar's testimony again. The request was made on a Friday after only a short period of deliberation. The court urged the jurors to rely on their collective memories to determine the facts of the case. The jury relayed that its final decision was based on Sadar's testimony and asked the court to reconsider its request. Again, the court urged the jurors to rely on their recollections, and if they could not, then to narrow the request. The jury responded that it specifically wanted to hear Sadar's testimony regarding his encounter with the suspect at the gate and his description of the suspect. The court informed the jury that it would comply with its request, but that it should continue to deliberate.

Following the weekend, on Monday, the court provided the jury with the entire transcript of Sadar's testimony, including both direct and cross-examination. Hernandez vehemently objected to providing the testimony to the jury in any manner. In the alternative, Hernandez requested the transcript be read to the jury in open court; this request was denied. Finally, the court denied his request for any limiting instruction regarding the jury's emphasis of the transcript. After receiving the transcript, the jury deliberated for approximately ninety minutes before finding Hernandez guilty of being a felon in possession of a firearm.

### III.

### DISCUSSION

#### A. Motion to Suppress

The district court denied Hernandez's motion to suppress evidence holding the police had reasonable suspicion to approach and detain Hernandez for questioning. It did not specifically find that Hernandez was "seized" by Sadar before he fled. However, the district court's inquiry into whether the stop of

Hernandez was based upon reasonable suspicion presumes that a seizure occurred.

Hernandez argues he was "seized" within the meaning of the Fourth Amendment because he briefly submitted to Sadar's show of authority before fleeing. Further, he argues the seizure was illegal because the police officers did not have reasonable suspicion to detain him for questioning. Consequently, he argues the gun which he discarded during his flight cannot be considered abandoned, but instead it is fruit of an unlawful seizure. We reject these arguments and hold that Hernandez was never actually seized by Sadar.

We review "[t]he district court's finding of historical facts ... under the clearly erroneous standard, but the ultimate determination of whether those facts amount to an unlawful seizure is a matter of law that we review *de novo.*" *United States v. Johnson,* 903 F.2d 1219, 1221 (9th Cir.), *cert. denied,* 498 U.S. 985, 111 S.Ct. 520, 112 L.Ed.2d 531 (1990). A seizure occurs either when a suspect is physically forced to stop or when the suspect submits to the officer's show of authority. *See California v. Hodari D.,* 499 U.S. 621, 626, 111 S.Ct. 1547, 1550–51, 113 L.Ed.2d 690 (1991). "[A] seizure does not occur if, in response to a show of authority, the subject does not yield; in that event, the seizure occurs only when the police physically subdue the subject." *United States v. Santamaria–Hernandez,* 968 F.2d 980, 983 (9th Cir.1992). Only when an encounter is classified as a seizure must we determine whether there was reasonable suspicion. *See United States v. Wilson,* 953 F.2d 116, 124 (4th Cir.1991); *cf. Morgan v. Woessner,* 997 F.2d 1244, 1254 (9th Cir.1993), *cert. dismissed,* —— U.S. ——, 114 S.Ct. 671, 126 L.Ed.2d 640 (1994).

For the proposition that a defendant can be seized despite subsequent flight, Hernandez relies principally on *Wilson,* 953 F.2d 116, and *United States v. Holloway,* 962 F.2d 451 (5th Cir.1992). In *Wilson,* the court found the defendant had been seized within the meaning of the Fourth Amendment after he repeatedly denied consent for police officers to search his coat. The officers persisted in following the defendant through the airport requesting consent to search. The court held:

> The officer's prolonged and persistent questioning after the suspect had conveyed an unequivocal unwillingness to engage in further conversation with the officer is the type of conduct that is proscribed by the Fourth Amendment. We conclude, therefore, that [the defendant] was "seized" sometime soon after he denied the agent's request to search the coat.

*Wilson,* 953 F.2d at 123 (footnote omitted). In *Holloway,* officers blocked the fleeing defendant's car by pulling out in front of him in their patrol car while another unit simultaneously moved in behind him. 962 F.2d at 453–54. The court found the defendant had been seized because "blocking [the defendant's] path of direction constituted ... an application of physical force." *Id.* at 456.

Hernandez also cites to *United States v. Morgan,* 936 F.2d 1561 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1190, 117 L.Ed.2d 431 (1992), to support his assertion that a defendant's momentary hesitation constitutes submission to authority thereby resulting in seizure. In *Morgan,* the seizing officer activated his overhead lights and followed the car carrying the defendant. *Id.* at 1565. Eventually, the car pulled into a driveway, and the officer pulled in behind it. *Id.* After the defendant left the car, the officer told the defendant to "hold up" to which the defendant responded "What do you want?" while backing away from the officer. *Id.* When told not to run, the defendant fled. *Id.* The court held that the defendant, through his actions, at least momentarily yielded to the officer's apparent show of authority. *Id.* at 1567.

In this case, Sadar did show authority by stating words to the effect of "Police. Stop right there. I need to talk to you." Hernandez relies on Sadar's testimony describing his reaction to this statement to establish that he submitted to Sadar's show of authority. Sadar testified:

> [Hernandez] hesitated for a moment as I walked towards him and at that—then he was looking directly at me and then he

turned and bolted and tried to jump over the fence.

Based on this testimony, Hernandez requests we find he submitted to authority and was seized, despite his subsequent flight, merely because he hesitated for a moment and made direct eye contact with Sadar. We decline to hold these actions sufficient to constitute submission to authority.

This case can be easily distinguished from *Holloway, Wilson,* and *Morgan.* Unlike the officer in *Wilson,* Sadar did not subject Hernandez to prolonged and persistent questioning despite an unequivocal unwillingness to engage in conversation. Nor did Sadar assert physical force over Hernandez sufficient to impede his escape as in *Holloway.* Sadar did have physical contact with Hernandez during a brief struggle, but obviously, this force was insufficient to impede Hernandez because he fled. Finally, although the court in *Morgan* found the defendant's momentary hesitation relevant, this hesitation was not the only factor on which the court based its conclusion that a seizure had occurred. Other crucial factors existed, including that the defendant was in a car which was being followed by an officer with his overhead lights activated; the car pulled over; and after the defendant left the car, he verbally responded to the officer's show of authority. *Morgan,* 936 F.2d at 1567. None of these additional factors existed in Hernandez's case.

■ We decline to adopt a rule whereby momentary hesitation and direct eye contact prior to flight constitute submission to a show of authority. Such a rule would encourage suspects to flee after the slightest contact with an officer in order to discard evidence, and yet still maintain Fourth Amendment protections. A seizure does not occur if an officer applies physical force in an attempt to detain a suspect but such force is ineffective. *See Hodari,* 499 U.S. at 625, 111 S.Ct. at 1550.

We hold that Hernandez was not seized because he never submitted to authority, nor was he physically subdued. Consequently, any evidence obtained during Sadar and Timmerman's encounter with Hernandez is admissible, including the discarded gun. Because we hold that Hernandez was never seized, we need not address his contention that the officers did not have reasonable suspicion to conduct an investigatory stop.

### B. Sufficiency of Evidence

Hernandez stipulated that he had been "convicted of a felony" prior to his arrest. However, strictly construing the language of § 922(g)(1), Hernandez contends there was insufficient evidence to establish that he had been "convicted of a crime punishable by more than one year." The Government argues Hernandez invited this error. We agree.

■ An error under the invited error doctrine is "an error that is caused by the actions of the complaining party." *United States v. Schaff,* 948 F.2d 501, 506 (9th Cir. 1991). When an error is invited, we reverse the conviction only in the most exceptional situation. *People of Territory of Guam v. Alvarez,* 763 F.2d 1036, 1038 (9th Cir.1985). The preservation of the integrity of the judicial process or the prevention of a miscarriage of justice are exceptional situations requiring reversal even if an error is invited. *See id.*

■ This case does not present an instance of an exceptional situation wherein invited error should result in reversal. Prior to trial, Hernandez stipulated that he was convicted of burglary in April 1988 which resulted in a sentence of six years imprisonment. Hernandez himself told the court he understood the consequences of his stipulation.[3] Further, Hernandez's defense counsel

---

3. The court elicited the following testimony from Hernandez:

> THE COURT: For purposes of this case, it is your desire to stipulate that you did in fact suffer a felony conviction so that the evidence about a felony conviction is not presented to the jury?

MR. HERNANDEZ: Yes.

THE COURT: Now, you understand that if you stipulate to the issue of the felony, you are basically agreeing with me—or agreeing to me that you did suffer a felony conviction. And you are withdrawing from the jury's consideration any evidence as—about the felony to

used the terms "felony" and "crime punishable by more than one year" interchangeably; he indicated the stipulation was intended to fulfill an element of § 922(g)(1), regardless of whether it was referred to as a felony or a crime punishable by more than one year's imprisonment.[4] Also, the defense requested an instruction which referred to the requisite element as a felony rather than a crime punishable by more than one year's imprisonment.

We find Hernandez's semantic argument to be without merit. The defense and the court clearly intended "felony" to mean a "crime punishable by more than one year." Consequently, we hold Hernandez's stipulation to a prior felony was sufficient evidence to fulfill that element of § 922(g)(1).

### C. Transcript of Sadar's Testimony

■ Hernandez argues the district court abused its discretion by allowing the jury to review the transcript of Sadar's testimony during deliberation. The Government contends the district court did not abuse its discretion because it took affirmative steps to avoid undue emphasis of any portion of Sadar's testimony by 1) providing only a transcript so voice inflections would not influence the jury, and 2) providing both direct and cross-examination testimony. We hold these minimal protections were insufficient to prevent undue emphasis of Sadar's testimony.

■ We review a decision to allow the jury to reread transcripts in the jury room for an abuse of discretion. *See United States v. Lujan*, 936 F.2d 406, 411 (9th Cir.1991). "The determination to allow a rereading or rehearing of testimony must be based on particular facts and circumstances of the case. Undue emphasis of particular testimony should not be permitted." *United States v. Binder*, 769 F.2d 595, 600 (9th Cir.1985).

Under the abuse of discretion standard, we will not reverse unless we have a definite and firm conviction that the district court committed a clear error in judgment. *United States v. Plainbull*, 957 F.2d 724, 725 (9th Cir.1992).

■ In *United States v. Sacco*, 869 F.2d 499, 502 (9th Cir.1989), we expressed our concern that "in the privacy of a jury room, a jury, unsupervised by the judge, might repeatedly replay crucial moments of testimony before reaching a guilty verdict." To avoid the possibility of this undue emphasis, the preferred method of rehearing testimony is in open court, under the supervision of the court, with the defendant and attorneys present. *See id.* However, despite the potential for undue emphasis created by allowing the trial transcript or portions thereof in the jury room, there are circumstances under which it is not an abuse of discretion to allow a jury to review a transcript during deliberation. *See Lujan*, 936 F.2d at 411-12.

In *Lujan*, the district court provided the jury, upon its request, with a copy of the trial transcript during deliberation. Noting the many precautions taken to avoid undue emphasis of any portion of the trial transcript, we held the district court did not abuse its discretion. *Id.* at 411. The precautions included that the district court: 1) provided counsel an opportunity to note inaccuracies in the transcript; 2) cautioned the jury that the transcript was not to serve as a substitute for memory or for assessment of credibility; 3) admonished the jury to weigh all the evidence and not focus on any portion of the trial; and 4) instructed that the transcript was not authoritative and should not prevail over the jurors' memories. *Id.* at 412.

■ Unlike the many precautions taken in *Lujan*, the district court in this case failed to take sufficient precautions to avoid undue

---

make sure that you in fact suffered it. So you're giving up your right to have them make a finding that you had a prior felony conviction. Their issue will be whether you knowingly and willfully possessed the firearm. You understand that?
MR. HERNANDEZ: Yes, I understand.
THE COURT: Is that what you wish to do?
MR. HERNANDEZ: Yes.

**4.** The court elicited the following statement from Hernandez's defense counsel:
THE COURT: Okay. Wait a minute. What are you going to do about—we'll tell them that

he has stipulated to the felony, so the only issue for them is whether he possessed? Right? And we won't tell them what felony.
[DEFENSE COUNSEL]: That's correct, your Honor.
THE COURT: Okay. So the indictment that's going to them is being a person who's been previously convicted of a crime punishable by imprisonment for terms exceeding one year, possessed a gun. Right?
[DEFENSE COUNSEL]: Yes, your Honor.

emphasis. The jury clearly indicated by note that its final decision turned on Sadar's testimony, specifically his description of the suspect. Because of the jury's obvious intent to emphasize a specific portion of the transcript, the district court permitted undue emphasis when it failed to admonish the jury to weigh all the evidence and to instruct that the transcript was not authoritative.[5]

Although the district court did provide the jury with both the direct and cross-examination of Sadar's testimony, this precaution alone was insufficient to prevent undue emphasis.[6] Consequently, we hold the district court committed a clear error of judgment thereby abusing its discretion when it allowed the jury to have a transcript of Sadar's testimony without ensuring the jury did not unduly emphasize it.

## IV.

### CONCLUSION

Although the district court did not err by denying Hernandez's motion to suppress and the stipulation was sufficient to fulfill an element of § 922(g)(1), we hold the district court abused its discretion by allowing the jury to reread the transcript of Sadar's testimony in the jury room during deliberation without taking necessary precautionary measures to avoid undue emphasis. Accordingly, we reverse and remand for a new trial or other appropriate disposition.

**REVERSED AND REMANDED.**

---

**5.** Another necessary precaution to be taken when the district court sends a specific portion of the trial transcript to the jury is a review for accuracy of the content of that transcript. Hernandez' defense counsel was apparently given the opportunity to review the transcript of Sadar's testimony to ensure all side bar conferences were deleted. However, whether he was allowed an opportunity to review the transcript for accuracy of content is unclear. A district court should allow a full review for accuracy of content and not just deletion of side bars when a specific portion of the trial transcript is sent to the jury. However, because we hold, regardless of this issue, that the district court abused its discretion, we do not address this issue.

**6.** We reject the Government's contention that eliminating the voice inflections from testimony will prevent undue emphasis.