**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 09-10033 |
| Plaintiff - Appellee, | D.C. No. 4:08-cr-00053-FRZ-BPV-1 |
| v. | |
| MANUEL LOPEZ-IBARRA, | MEMORANDUM* |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Arizona
Frank R. Zapata, District Judge, Presiding

Submitted January 11, 2010**
San Francisco, California

Before: NOONAN, HAWKINS and M. SMITH, Circuit Judges.

Manuel Lopez-Ibarra ("Lopez") appeals his conviction for possession with

intent to distribute 153 kilograms of marijuana, arguing error in the district court's

denial of his suppression motion. We affirm.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

An investigatory detention–a brief, warrantless seizure by police officers–is lawful if based on reasonable suspicion. *Terry v. Ohio*, 392 U.S. 1, 20-21 (1968). A seizure occurs at the moment when "police physically subdue the subject." *United States v. Santamaria-Hernandez*, 968 F.2d 980, 983 (9th Cir. 1992) (defendant not seized for Fourth Amendment purposes "until he was physically apprehended by the border patrol agents at the end of the chase"); *see also California v. Hodari D.*, 499 U.S. 621, 628-29 (1991); *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989). Submission to a police officer's show of authority is determined by the physical stop and surrender of the defendant, and not by any other movements or indications. *See United States v. Hernandez*, 27 F.3d 1403, 1407 (9th Cir. 1994).

Here, a seizure did not occur when Peralta turned on his overhead lights and sirens, because Lopez failed to stop. For purposes of the Fourth Amendment, the only seizure that occurred was when Lopez swerved and exited his vehicle after the extended car chase. Therefore, the court was free to consider Lopez's subsequent flight from Peralta in its evaluation of whether Peralta had reasonable suspicion to seize Lopez. *See Santamaria-Hernandez*, 968 F.2d at 983.

Reasonable suspicion existed prior to the stop. "[T]he Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity 'may be afoot,'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002)

2

(citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)), which requires an examination of "the totality of the circumstances . . . to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *Id*. (citing *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). Officers are permitted "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Arvizu*, 534 U.S. at 273 (internal quotation marks omitted).

The Supreme Court has set forth several non-exclusive factors giving rise to reasonable suspicion in the context of border stops, including:

> (1) characteristics of the area in which the vehicle was encountered; (2) proximity to the border; (3) usual traffic patterns on a particular road; [(4)] previous experience with alien traffic; [(5)] recent illegal border crossings in the area; [(6)] erratic or evasive driving behavior; [(7)] aspects of the vehicle; and [(8)] behavior or appearance of the driver.

*United States v. Diaz-Juarez*, 299 F.3d 1138, 1141 (9th Cir. 2002) (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 884-85 (1975)). Nearly all of these factors were present in Peralta's stop of Lopez here, and therefore, Peralta had reasonable suspicion to stop Lopez's vehicle.

Peralta first encountered Lopez at approximately 26 miles from the border, *see Diaz-Juarez*, 299 F.3d at 1142, *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000), on a highway leading from Nogales, a border town that, from Peralta's experience on the

3

Border Patrol, frequently served as a location for illegal alien activity and drug smuggling. *See Arvizu*, 534 U.S. at 277; *Santamaria-Hernandez*, 968 F.2d at 984; *United States v. Garcia-Barron*, 116 F.3d 1305 (9th Cir. 1997). In addition, Lopez's car was heavily-loaded or riding low, with only one visible driver, and was traveling in tandem with an SUV. *See Brignoni-Ponce*, 422 U.S. at 885; *United States v. Franco-Munoz*, 952 F.2d 1055, 1057 (9th Cir. 1991); *United States v. Medina-Gasca*, 739 F.2d 1451, 1453 (9th Cir. 1984); *United States v. Bugarin-Casas*, 484 F.2d 853, 855 (9th Cir. 1973).

Also, the windows of Lopez's car were fogged which, based on Peralta's training, indicated that more than one person might be concealed within the vehicle. *See Arvizu*, 534 U.S. at 276. Lopez also fled once Peralta turned on his overhead lights and sirens. *See United States v. Smith*, 217 F.3d 746, 750 (9th Cir. 2000); *Santamaria-Hernandez*, 968 F.2d at 984; *United States v. Robert L.*, 874 F.2d 701, 704 (9th Cir. 1989); *Medina-Gasca*, 739 F.2d at 1453.

We need not reach whether, despite any initial stop, the taint of illegality was purged by Lopez's subsequent flight. While it is theoretically possible that Peralta lacked reasonable suspicion to stop Lopez prior to turning his overhead lights on, this is irrelevant because Lopez in fact did not yield. *See Hernandez*, 27 F.3d at 1407.

**AFFIRMED.**