FILED
United States Court of Appeals
Tenth Circuit

February 23, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

LADALE F. WASHINGTON,

        Defendant - Appellant.

No. 09-3091

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D. Ct. No. 6:07-10205-WEB-1)**

---

John K. Henderson, Jr., Assistant Federal Public Defender, Office of the Public Defender for the District of Kansas, Wichita, Kansas, appearing for Appellant.

Brent I. Anderson, Assistant United States Attorney (Lanny D. Welch, United States Attorney, with him on the brief), Office of the United States Attorney for the District of Kansas, Wichita, Kansas, appearing for Appellee.

---

Before **TACHA**, **ANDERSON**, and **BRISCOE**, Circuit Judges.

---

**TACHA**, Circuit Judge.

---

Defendant-appellant Ladale F. Washington was indicted in November 2007 on two counts of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). After a trial by jury, Mr. Washington was found

guilty and sentenced to thirty months in prison and two years of supervised release. He now appeals his conviction, arguing that the district court erroneously (1) denied his motion to dismiss the indictment based on a violation of the Interstate Agreement on Detainers ("IAD"), (2) refused to instruct the jury on "fleeting possession," and (3) permitted the prosecution's exhibit of certain prior testimony to be sent to the jury during deliberation. We have jurisdiction under 28 U.S.C. § 1291, and we AFFIRM.

## I. BACKGROUND

On May 30, 2007, Sergeant White and Officer Henning of the Wichita Police Department were on patrol in separate cars in Wichita, Kansas, when they heard gun shots. The officers both saw a white car speeding toward them and immediately began following the vehicle. Sergeant White initiated a traffic stop after the vehicle failed to signal a turn properly. As the vehicle pulled to a stop, the right front passenger jumped from the car and began fleeing on foot. Sergeant White pursued the passenger in his patrol car while Officer Henning continued to pursue the vehicle, which had since sped away.

Ultimately, the front passenger was apprehended, the vehicle was stopped, and the other five occupants of the vehicle, including Mr. Washington, were handcuffed and searched. Police found a .45 caliber pistol in the waistband of a woman passenger who had been seated either next to Mr. Washington or on his lap in the back seat. A different passenger stated that Mr. Washington had told

- 2 -

the woman passenger to hide the gun in her waistband because the police officers would not search a woman. Police also found a silver .22 caliber semi-automatic pistol under the right front passenger seat. The officer who found the pistol testified that "anybody from the back or the front [seat] could have gotten to it." Additionally, Mr. Washington told Officer Henning during a post-arrest interview that "I handled the .45 yesterday and the silver .22 just today."

On November 15, 2007, a federal grand jury indicted Mr. Washington on two counts of being a felon in possession of a firearm. At the time, however, Mr. Washington was in the custody of the Kansas Department of Corrections ("KDOC") for a probation violation based on the same events. Thus, the United States, through the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), lodged a detainer with the KDOC on November 21.

On December 5, Mr. Washington, acting pro se, drafted a document titled "Final Disposition of Detainer" which stated that he was "filing a 180-day writ." The parties do not dispute that Mr. Washington was attempting in the document to invoke his rights under the IAD, which provides that a prisoner in the custody of a state who is the subject of a detainer lodged by the United States must be brought to trial on the federal charges within 180 days after he has caused to be delivered to the prosecuting officer and the appropriate court a request for final disposition of the charges on which the detainer is based. *See* 18 U.S.C. App. 2 § 2 art. II(a), III(a); *Fex v. Michigan*, 507 U.S. 43, 44–45 (1993). He mailed one

- 3 -

copy of the document to "Department of Justice, Issuing prosecutor" with an address of 301 N. Main in Wichita. He mailed a second copy of the document to "Department of Justice, Court" with the same mailing address of 301 N. Main in Wichita. The United States Attorney's Office ("USAO"), which is located in the building at 301 N. Main in Wichita, received both documents on December 12. The USAO kept both documents in its file and did not forward the copy addressed to "Department of Justice, Court" to the district court, which is located at a different address.

On December 18, Mr. Washington submitted a form application through the KDOC requesting a final disposition of detainer. *See id.* Art. III(b). The KDOC sent the application through certified mail to the ATF field office at 301 N. Main in Wichita, Kansas. The mailing was confirmed as delivered on January 7, 2008, and a notation was made on the delivery confirmation stating "7/7/08 Deadline." There is no evidence in the record that the ATF forwarded Mr. Washington's application to the district court or that the KDOC sent a copy of the application to the district court.

Mr. Washington was not brought to federal court until July 25, 2008, when he made his initial appearance. On August 27, with the assistance of counsel, Mr. Washington moved to dismiss the indictment based on a violation of the IAD. The district court denied the motion, citing Mr. Washington's failure to deliver a copy of his request to the court as required by the IAD.

At trial, the court admitted into evidence a transcript of Mr. Washington's testimony at his probation violation hearing, during which he made inculpatory statements regarding his possession of the two firearms. Over Mr. Washington's objection, the court also permitted the jury to review the exhibit during their deliberations. Also over Mr. Washington's objection, the district court refused to instruct the jury that "fleeting possession" is insufficient to support a conviction under § 922(g). On January 14, 2009, Mr. Washington was convicted on both counts.

## II. DISCUSSION

A.  <u>Interstate Agreement on Detainers</u>

Mr. Washington first argues that the district court should have dismissed the indictment under the IAD. Article III of the IAD provides:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint . . . .

18 U.S.C. App. 2 § 2 art. III(a). All jurisdictions within the United States, as well as the United States itself, are parties to the IAD. *Id.* § 2; § 2 art. II(a).

The Supreme Court has held that the 180-day timeframe under the IAD

does not begin until "the prisoner's request for final disposition of the charges against him has *actually been delivered* to the court and prosecuting officer of the jurisdiction that lodged the detainer against him." *Fex*, 507 U.S. at 52 (emphasis added). Here, it is undisputed that the district court never received Mr. Washington's request for final disposition because Mr. Washington sent both pro se requests to the USAO's mailing address and the KDOC sent his request only to the ATF office. Nor do we think that delivery to the USAO or the ATF office constitutes delivery to the district court for purposes of the IAD. Nevertheless, Mr. Washington argues that he is entitled to relief because the USAO should have forwarded the request addressed to "Department of Justice, Court" to the district court.

While we are not unsympathetic to Mr. Washington's position, his argument is foreclosed by *Fex*. There, the Supreme Court specifically required actual delivery of a request to both the prosecutor and the court, and it refused to carve a "fairness" exception to the express language of the IAD in cases in which a third party had negligently or maliciously prevented delivery from occurring. *Id.* at 50–52. Other circuits have followed *Fex*'s clear instructions on this point. *See, e.g.*, *United States v. Dooley*, 580 F.3d 682, 685 (8th Cir. 2009) (affirming the denial of a motion to dismiss the indictment based on the IAD, reasoning that "even where a prisoner has made a good-faith effort to invoke his rights under the [IAD], he is not entitled to relief unless adequate notice was actually received");

*United States v. Daily*, 488 F.3d 796, 797, 801 (8th Cir. 2007) (same, in case where prison officials had refused to deliver prisoner's request under the IAD to any federal official at all); *United States v. Brewington*, 512 F.3d 995, 997 (7th Cir. 2008) (affirming the denial of a motion to dismiss the indictment based on the IAD when state prison officials allegedly sent the speedy trial request only to the United States Attorney because "even if delivery of the notice is delayed due to negligence or malice on the part of prison authorities, the IAD's clock does not start running until the notice is actually received by both the prosecutor and the court"); *United States v. Jones*, 454 F.3d 642, 647–48 (7th Cir. 2006) (same, explaining that "[w]hile this may be a strict rule, the Supreme Court's decision in *Fex* explicitly contemplated a more egregious error on the part of the warden and found dismissal of the charges to be an inappropriate remedy"); *United States v. Johnson*, 196 F.3d 1000, 1002 (9th Cir. 1999) ("Under *Fex*, it does not matter what the prisoner may or may not have done in an attempt to cause such delivery . . . . Until actual delivery occurred, the 180-day period did not start to run."). Here, despite the fact that the USAO could have forwarded Mr. Washington's demand under the IAD to the district court, it did not do so. Because actual delivery was not accomplished with regard to both the court and the prosecutor, there was no violation of the IAD.

Similarly, *Fex* also undermines Mr. Washington's suggestion that the indictment should have been dismissed because the purpose of the IAD's

requirements—notice to the prosecutor—was fulfilled in this case. As the Seventh Circuit has explained, this "might be a good argument for rewriting the IAD, but it is beside the point because the IAD, as it presently reads, doesn't allow for that possibility." *Brewington*, 512 F.3d at 997. Therefore, the district court did not err in denying Mr. Washington's motion to dismiss.

B.      Fleeting Possession Instruction

To support a conviction under § 922(g)(1), the government must prove that the defendant "possessed" the firearm. 18 U.S.C. § 922(g)(1). Possession can be either actual or constructive; that is, the person must either have "direct physical control over [the] firearm," or he must "knowingly hold[] the power and ability to exercise dominion and control over [the] firearm." *United States v. McCane*, 573 F.3d 1037, 1046 (10th Cir. 2009). Mr. Washington does not appear to contest that he either actually or constructively possessed the two firearms at issue in this case. Instead, he argues that the district court should have provided the jury with a "fleeting possession" instruction. Specifically, Mr. Washington requested that the court provide the following instruction contained in Tenth Circuit Pattern Jury Instruction 1.31:

> In addition, momentary or transitory control of an object is not possession. You should not find that the defendant possessed the object if he possessed it only momentarily, or did not know that he possessed it.

*See* Tenth Circuit Pattern Jury Instruction 1.31, ¶ 6.

We review a district court's decision on whether to give a particular jury instruction for an abuse of discretion. *See United States v. Turner*, 553 F.3d 1337, 1347 (10th Cir. 2009). A defendant is only entitled to an instruction on his theory of defense if it is supported by sufficient evidence and is a correct statement of the law. *Id.*

Although this circuit has discussed a fleeting possession defense, we have never recognized one. *See United States v. Baker*, 508 F.3d 1321, 1326 n.2 (10th Cir. 2007); *United States v. Al-Rekabi*, 454 F.3d 1113, 1126 (10th Cir. 2006). Furthermore, even if we were to adopt the defense—which we do not do today—it only applies if the defendant (1) momentarily possessed contraband and (2) either lacked knowledge that he possessed contraband or had a legally justifiable reason to possess it temporarily. *United States v. Adkins*, 196 F.3d 1112, 1115 (10th Cir. 1999), *overruled on other grounds by Chambers v. United States*, 129 S. Ct. 687 (2009). No possible interpretation of the evidence presented in this case could support acquittal under this theory. Mr. Washington has never contended that he did not know he was handling the guns or that he had a legally justifiable reason to do so. His defense at trial was that he handled them momentarily or not at all. Because the evidence, at best, would support a favorable finding as to only the first element of a fleeting possession defense, the district court did not abuse its discretion by refusing to so instruct the jury.

C.     Transcript of Prior Testimony

At trial, the government introduced Mr. Washington's testimony from his state court probation violation hearing in which he stated that he had handled the two firearms. The court admitted the transcript of the testimony as an exhibit, and the court allowed the exhibit to go to the jury during their deliberations over Mr. Washington's objection. Mr. Washington contends that allowing the transcript to go to the jury was error and resulted in undue emphasis on the prior testimony. "It is within the discretion of the trial judge to decide what exhibits are permitted in the jury room and this court will not overturn the trial court's exercise of discretion absent a clear showing of abuse and resulting prejudice." *United States v. Fields*, 516 F.3d 923, 950 (10th Cir. 2008) (quotations and alterations omitted).

Mr. Washington cites one Ninth Circuit opinion in support of his position, but that case is distinguishable. In *United States v. Hernandez*, 27 F.3d 1403 (9th Cir. 1994), the district court submitted to the jury during their deliberation the entire transcript of a key prosecution witness's trial testimony. *Id.* at 1405. The Ninth Circuit explained that because allowing the rehearing of trial testimony may have the tendency to "repeatedly replay crucial moments" in the trial and therefore place "undue emphasis" on them, it is preferable to rehear testimony in open court rather than submit a partial trial transcript to the jury during deliberation. *Id.* at 1408. Furthermore, the *Hernandez* court was concerned that since the jury requested that particular transcript, there was an increased

likelihood that "its final decision turned on [the requested] testimony." *Id.* at 1409. In Mr. Washington's case, however, the court did not give to the jury a copy of a particular witness's trial testimony. Rather, the transcript had been admitted into evidence as an exhibit in the trial, and the district court sent it and *all* exhibits to the jury. Thus, the risk of undue emphasis identified in *Hernandez* simply is not present in this case.

Moreover, Mr. Washington has not shown, as he must under our case law, that the submission of the exhibit to the jury was prejudicial. He argues that the transcript was "particularly harmful in this case where the only real incriminating evidence was the statement Mr. Washington made in the transcripts provided to the jury." We do not agree. Officer Henning testified that Mr. Washington told him he had handled the firearms, another passenger testified she heard Mr. Washington instruct a fellow passenger to hide the gun, and one of the guns was found beneath the seat in front of Mr. Washington where he could easily have reached it. Thus, even without the transcript the jury had sufficient evidence to find that Mr. Washington at the very least constructively possessed the firearms. The district court therefore did not abuse its discretion in allowing the transcript to go to the jury room during deliberation.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM.