COWEN, Circuit Judge,
dissenting.
One of my colleagues has concluded that the Government waived the argument that it seeks to raise on appeal and has affirmed the District Court’s order suppressing the firearm on that ground. My other colleague has concluded that, while the Government has not waived its argument on appeal, the argument lacks merit, and has joined in the decision to affirm. I break from my colleagues on both grounds, concluding that the Government did not waive its argument and that the Government should prevail on appeal. I would reverse the District Court.
I. BACKGROUND
The facts of this case are fairly straightforward as set forth in Judge Hardiman’s opinion. The issues argued by the parties before the District Court and on appeal; however, merit additional elaboration. In the District Court, Dupree moved to suppress evidence of the firearm, contending that the officers lacked reasonable suspicion to stop him, that he was seized within the Fourth Amendment when Officer Mabry grabbed his arm, and that the firearm must be suppressed as fruit of the poisonous tree. The Government argued that the police had reasonable suspicion to stop Dupree and that the seizure did not occur until the police arrested him after he fled. The Government prominently discussed Hodari D. in its opposition papers and during oral argument.
The District Court conducted a suppression hearing and subsequently granted Dupree’s motion. It held that Officer Mabry seized Dupree without reasonable suspicion when he grabbed Dupree’s arm, that the “seizure directly precipitated [Dupree’s] flight and abandonment of the firearm,” and that the firearm was fruit of the poisonous tree. The Government moved for reconsideration, arguing in depth that the District Court should deny Dupree’s motion under the Supreme Court’s instruction in Hodari D. The Government excerpted several passages from Hodari D. to support its position. The District Court *734 denied the Government’s motion concluding that the court did not commit an error of law when it found that Dupree was seized when Officer Mabry grabbed Dupree’s arm, and that the gun was the fruit of that seizure (even though Dupree freed himself of that seizure and was no longer in custody when he discarded the pistol).
On appeal, the Government concedes that a seizure occurred, however momentarily, when Officer Mabry grabbed Dupree’s arm and that Officer Mabry lacked reasonable suspicion to seize Dupree. See Gov’t Br. at 14 (“The government acknowledges that at the moment of Officer Mabry’s action in grabbing Dupree and stopping his movement on a bicycle, the police had an insufficient basis to stop and frisk Dupree, and that any seizure of his person or possessions at that time would be unlawful.”); Gov’t Br. at 31 (“[I]t is clear that Officer Mabry’s two-second grasp of Dupree, although a seizure for Fourth Amendment purposes, does not taint the admissibility of the handgun recovered during Dupree’s flight.”). Thus, the District Court’s determination that an unlawful .seizure occurred when Officer Mabry grabbed Dupree’s arm is not at issue on appeal.
The Government’s position is that suppression is not merited when evidence is abandoned by a suspect during flight if the suspect fled after a momentary, unlawful physical seizure because the Fourth Amendment does not protect the actions of suspects under these circumstances. The Government relies on the Supreme Court’s decision in Hodari D. to support its position. Dupree counters that suppression is required under this Court’s Fourth Amendment precedent.
II. DISCUSSION
A. Waiver
Before I address the merits of the Government’s argument, it is necessary to address a procedural issue: whether the Government waived or forfeited the argument that it seeks to raise on appeal by its litigation positions below. Judge Fisher has concluded, and I agree, that the Government did not waive or forfeit its argument. Contrary to Judge Hardiman’s conclusion, the Government’s argument is not new. The Government discussed the primary case upon which it relies, Hodari D., in its opposition to Dupree’s motion to suppress and in its amended opposition. Those briefs focused on the Government’s then primary argument—that a seizure did not occur until the police arrested Dupree—however, the Government’s earlier position does not preclude consideration of the argument it now makes as the Government relied on Hodari D quite broadly. A finding that the Government waived its argument is improper particularly when one reviews the Government’s motion for reconsideration of suppression, in which the Government briefed suppression standards extensively and excerpted the passages from Hodari D that are at issue on appeal. Notably, Dupree did not raise any preservation or waiver argument in his opposition to reconsideration; rather, Dupree addressed the merits of the Government’s position. Further, the District Court did not foreclose consideration of those passages or make any findings of waiver with respect to the Hodari D. argument when it ruled on the Government’s reconsideration motion.
The Government made several arguments in the proceedings before the District Court and cited and excerpted numerous cases, including the portion of Hodari D. at issue on appeal. This case does not present a situation in which a judge was expected to anticipate an argument that was never raised. The Supreme Court’s instruction in Hodari D. was adequately and prominently before the District Court such that the Government did not waive or *735 fail to preserve its primary argument on appeal.
B. Suppression
The issue before this Court, as I understand it, is whether suppression is required when a suspect flees from an officer’s momentary, unlawful physical seizure and the suspect discards evidence during flight that is later recovered. As I will set forth more clearly below, the Supreme Court’s instruction in Hodañ D. compels a reversal of the District Court’s order suppressing the firearm.[1] Therefore, I will dissent from my colleagues.
The Fourth Amendment prohibits “unreasonable searches and seizures.... ” U.S. Const, amend. IV. “Generally, for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause.” United States v. Robertson, 305 F.3d 164, 167 (3d Cir.2002). However, under the exception to the warrant requirement established in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), “an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.” Illinois v. Wardlow, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). “Any evidence obtained pursuant to an investigatory stop (also known as a ‘Terry stop’ or a ‘stop and frisk’) that does not meet this exception must be suppressed as ‘fruit of the poisonous tree.’ ” United States v. Brown, 448 F.3d 239, 244 (3d Cir.2006) (citing Wong Sun v. United States, 371 U.S. 471, 487-88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); United States v. Coggins, 986 F.2d 651, 653 (3d Cir.1993)).
In Hodari D., the Supreme Court explained that a seizure occurs within the meaning of the Fourth Amendment when there is either the “laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful,” or “submission to the assertion of authority.” Hodari D., 499 U.S. at 626, 111 S.Ct. 1547 (emphasis omitted). In elaborating on physical seizures, the Court clarified that:
To say that an arrest is effected by the slightest application of physical force, despite the arrestee’s escape, is not to say that for Fourth Amendment purposes there is a continuing arrest during the period of fugitivity. If, for example, [the law enforcement officer] had laid his hands upon Hodari to arrest him, but Hodari had broken away and had then cast away the cocaine, it would hardly be realistic to say that that disclosure had been made during the course of an arrest.
Id. at 625, 111 S.Ct. 1547 (emphasis in original).
The Court further explained that with respect to the principles underlying the Court’s Fourth Amendment precedent:
We do not think it desirable, even as a policy matter, to stretch the Fourth Amendment beyond its words and beyond the meaning of arrest.... Street pursuits always place the public at some risk, and compliance with police orders to stop should therefore be encouraged. *736 Only a few of those orders, we must presume, will be without adequate basis, and since the addressee has no ready means of identifying the deficient ones it almost invariably is the responsible course to comply. Unlawful orders will not be deterred, moreover, by sanctioning through the exclusionary rule those of them that are not obeyed. Since policemen do not command “Stop!” expecting to be ignored, or give chase hoping to be outrun, it fully suffices to apply the deterrent to their genuine, successful seizures.
Id. at 627, 111 S.Ct. 1547 (emphasis in original).
In Hodari D., police officers on patrol in a police vehicle in a high crime area turned down a street where several teenagers were huddled together. Id. at 623, 111 S.Ct. 1547. The teenagers fled as soon as they noticed the officers’ car. Hodari was one of those individuals and during flight he discarded what was later determined to be a moderate quantity of crack cocaine. Id. In addressing Hodari’s argument for suppression, the Supreme Court concluded that Hodari fled prior to any submission of authority, and therefore, no seizure had occurred prior to his flight. Under these circumstances, the Fourth Amendment is not implicated, and any evidence discarded during flight is admissible. Id. at 629, 111 S.Ct. 1547 (“In sum, assuming that Pertoso’s pursuit in the present case constituted a ‘show of authority’ enjoining Hodari to halt, since Hodari did not comply with that injunction he was not seized until he was tackled. The cocaine abandoned while he was running was in this case not the fruit of a seizure, and his motion to exclude evidence of it was properly denied.”).
Since Hodari D., courts have routinely held that evidence abandoned during flight from an earlier encounter with the police that did not constitute a seizure is admissible. See United States v. Smith, 575 F.3d 308, 312-16 (3d Cir.2009) (reversing suppression of a firearm obtained from an individual who discarded it during flight from law enforcement officers as the suspect fled before a seizure had occurred and therefore, had not triggered Fourth Amendment protections); United States v. Martin, 399 F.3d 750, 752-53 (6th Cir.2005) (affirming denial of suppression under Hodari D. as the defendant “had not been seized when he discarded his revolver”); United States v. Hernandez, 27 F.3d 1403, 1407 (9th Cir.1994) (“We hold that Hernandez was not seized because he never submitted to authority, nor was he physically subdued. Consequently, any evidence obtained during [the law enforcement officers’] encounter with Hernandez is admissible, including the discarded gun.”).
Additionally, courts have addressed whether evidence discarded by a defendant during flight from an encounter with the police that constituted an unlawful show-of-authority seizure is admissible. Most courts have suppressed such evidence as fruit of the poisonous tree. See, e.g., Brown, 448 F.3d at 252 (concluding that Brown was seized prior to his “aborted escape attempt” and evidence obtained after this seizure was inadmissible). However, at least one circuit has held otherwise. See United States v. Garcia, 516 F.2d 318, 319-20 (9th Cir.1975) (holding that evidence discarded when a defendant fled from an unlawful show-of-authority seizure is admissible as the law enforcement officers did not exploit the unlawful stop and the defendant’s flight was not tainted by the unlawful stop). The rationale for this holding is relevant to our analysis regarding the instant appeal. In Garcia, the court distinguished between two scenarios, explaining that:
If there were evidence in the record that the checkpoint at San Clemente was designed to lure suspected criminals into *737 flight from law enforcement officers, we might reach a different conclusion. Where a suspect’s act is the intended result of illegal police conduct, or ensuing police action, it is likely to prove tainted. But where the illegal conduct of the police is only a necessary condition leading up to the suspect’s act, no taint attaches to his conduct; a “but-for” connection alone is insufficient. In this case, the illegal stop was no more than part of a series of facts leading up to the subsequent flight. By ordering Martinez-Lopez to stop, the officer could hardly have intended him to flee.
Id. (internal citations omitted). Thus, contrary to Dupree’s contention, evidence discarded by a fleeing defendant after an unlawful seizure does not make that evidence per se inadmissible. Id. (holding that the discarded evidence was not tainted by the earlier unlawful stop); cf. United States v. Dawdy, 46 F.3d 1427, 1431 (8th Cir.1995) (“[W]e now hold that a defendant’s response to even an invalid arrest or Terry stop may constitute independent grounds for arrest.”).
The parties did not provide any authority from this Court or any of our sister circuits that addresses the precise issue in this appeal; namely, whether suppression is required when evidence is discarded by a defendant during flight after a momentary physical seizure occurs that is later deemed to be an unlawful seizure. In contrast to the absence of authority from the circuits, the Supreme Court gave the answer in Hodari D. when it hypothesized that if the law enforcement officer “had laid his hands upon Hodari to arrest him, but Hodari had broken away and had then cast away the cocaine, it would hardly be realistic to say that that disclosure had been made during the course of an arrest.” Hodari D., 499 U.S. at 625, 111 S.Ct. 1547. As the Court explained, there is no “continuing arrest” during a period of fugitivity. Id. It further elaborated that “[u]nlawful orders will not be deterred, moreover, by sanctioning through the exclusionary rule those of them that are not obeyed.” Id. at 627, 111 S.Ct. 1547.
To hold as Dupree suggests would create unacceptable incentives. It would encourage suspects to disobey orders from law enforcement officers, thereby placing the public at risk, while at the same time allowing suspects to retain Fourth Amendment protections. Cf. Hernandez, 27 F.3d at 1407 (expressing concern for any application of the exclusionary rule that would permit suspects to flee from law enforcement officers yet still qualify for the protections of the Fourth Amendment). Moreover, a decision to deny suppression under these circumstances is reinforced by the Supreme Court’s recent pronouncements regarding the exclusionary rule:
[T]he exclusionary rule is not an individual right and applies only where it result[s] in appreciable deterrence. We have repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation. Instead we have focused on the efficacy of the rule in deterring Fourth Amendment violations in the future.
Herring v. United States, — U.S. —, 129 S.Ct. 695, 700, 172 L.Ed.2d 496 (2009) (internal citations and quotation marks omitted). The Supreme Court has suggested that deterrence would be minimal under these circumstances thereby negating any value to exclusion.
III. CONCLUSION
Contrary to my colleagues, I have concluded that the Government did not waive its argument on appeal and that its argument should prevail. I would reverse the District Court’s order suppressing the firearm.