NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

JUL 12 2016

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| RONALD WEEKLEY, Jr., | No. 14-56210 |
| Plaintiff-Appellant, | D.C. No. 2:13-cv-04760-RZ |
| v. | |
| CITY OF LOS ANGELES, | MEMORANDUM[*] |
| Defendant, | |
| and | |
| MIGUEL REYNOSO, Officer; ARTURO GONZALEZ, Officer; FRANCISCO ULLOA; AQUILES MORALES, Sergeant, | |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Ralph Zarefsky, Magistrate Judge, Presiding

Submitted July 6, 2016[**]
Pasadena, California

Before: FERNANDEZ, CLIFTON, and FRIEDLAND, Circuit Judges.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Plaintiff-Appellant Ronald Weekley, Jr. appeals following a nine-day jury trial, which resulted in a verdict in favor of Defendants the City of Los Angeles and Los Angeles Police Department ("LAPD") Officers Reynoso, Gonzalez, Ulloa, and Morales.[1]   Weekley claims that the trial court erred in allowing some of the testimony of a defense expert, psychiatrist Dr. Rosenberg, and that the jury instructions misstated the law and misled the jury.   We affirm.

The events giving rise to this lawsuit began in August 2012 as Weekley was riding home on his skateboard.   At trial, Weekley testified that he got off his skateboard at an intersection and was walking on the sidewalk with his skateboard in hand when a patrol vehicle passed him.   In contrast, LAPD Officers Reynoso and Gonzalez, the two officers initially at the scene, testified that they saw Weekley skateboarding in the street (rather than carrying it on the sidewalk) and that they had to brake their police vehicle suddenly to avoid being hit by Weekley. Officer Gonzalez testified that he exited his patrol to try to talk to Weekley. When Weekley failed to stop, Gonzalez reached out to Weekley and Weekley pulled away.   Weekley continued to resist, and a fight ensued, which ultimately resulted in Weekley suffering a fractured cheekbone.   Weekley subsequently filed suit against Defendants, alleging excessive force in violation of his constitutional rights and seeking damages for the injuries he suffered as a result of the altercation.

---

[1] The parties consented to proceeding before a magistrate judge in this matter.

To discuss the extent of the physical and emotional injuries alleged by Weekley, both sides offered expert testimony. Before trial, Weekley had objected in a motion *in limine* to admitting testimony by Dr. Rosenberg that Weekley had exaggerated certain symptoms during Dr. Rosenberg's examination of him. The court denied the motion. Weekley argues on appeal that the court abused its discretion by denying the motion and allowing Dr. Rosenberg to testify on what Weekley characterizes as the subject of Weekley's credibility. We disagree.

As an initial matter, even if Dr. Rosenberg's testimony would have been inadmissible, it appears that Weekley opened the door to Dr. Rosenberg's testimony by initially eliciting testimony from his own expert, neurologist Dr. Fisk, relating to his sincerity in answering questions during Dr. Fisk's examination. "Under the rule of curative admissibility, or the 'opening the door' doctrine, the introduction of inadmissible evidence by one party allows an opponent, in the court's discretion, to introduce evidence on the same issue to rebut any false impression that might have resulted from the earlier admission." *United States v. Whitworth*, 856 F.2d 1268, 1285 (9th Cir. 1988). The testimony offered by Dr. Rosenberg was also on the subject of the reliability to Weekley's responses during his medical exam. Dr. Rosenberg testified, "Given the lack of alternative reasonable explanations" for the elevation of the "fake symptom scale of the MMPI-II" test he had administered, "and given how high the elevation was, the

only reasonable explanation from a psychiatric standpoint was the intentional exaggeration of his symptoms, primarily exaggeration of symptoms related to his ongoing physical claims."[2]   Dr. Rosenberg's testimony directly responded to the testimony Weekley had earlier offered from Dr. Fisk, because both addressed whether Weekley was faking any responses during medical examinations undertaken to determine the extent of his mental and physical injuries.   Dr. Rosenberg's testimony was therefore admissible at the discretion of the trial court.

Moreover, even if Dr. Fisk had not testified, the trial court would have been within its discretion in admitting Dr. Rosenberg's testimony.   Dr. Rosenberg did not opine as to Weekley's general credibility as a witness on all matters.   Rather,

---

[2] To the extent that Weekley objects to Dr. Rosenberg's testimony on the basis that Dr. Rosenberg went beyond responding to Fisk by suggesting a motive for exaggerating symptoms—in particular, that Weekley was exaggerating his symptoms for financial gain—his objection fails because Weekley specifically elicited that aspect of Dr. Rosenberg's testimony.   Statements about Weekley seeking financial gain were the result of questions on cross-examination by Weekley's attorneys like, "He's intentionally distorting so that he can get more money from this jury; correct, you think?"   Thus, Weekley appears to have invited any error on himself.   *United States v. Cazares*, 788 F.3d 956, 983 (9th Cir. 2015) (denying defendants' Confrontation Clause violation argument based, in part, on the fact that "defense counsel clearly invited this testimony" on cross-examination); *United States v. Hernandez*, 27 F.3d 1403, 1407 (9th Cir.), *as amended* (Sept. 21, 1994) ("An error under the invited error doctrine is 'an error that is caused by the actions of the complaining party.'" (quoting *United States v. Schaff,* 948 F.2d 501, 506 (9th Cir. 1991))).

4

Dr. Rosenberg explained, based on his qualifications as an expert,[3] that Weekley's responses to the testing he conducted suggested that Weekley was exaggerating his symptoms. Such testimony is properly admitted at the discretion of the trial court. *See United States v. Sine*, 493 F.3d 1021, 1033-34 (9th Cir. 2007) (holding that the government's use during cross-examination of factual findings from a prior judicial order was improper because "jurors are likely to defer to findings and determinations relevant to credibility made by an authoritative, professional factfinder rather than determine those issues for themselves," but explaining that "[o]ur determination . . . does not mean that admission of such facts will *always* fail the balancing test of Rule 403."); *United States v. Rohrer*, 708 F.2d 429, 434 (9th Cir. 1983) ("Although the credibility of a witness, unlike his competency, is a question for the jury, admission of expert psychiatric testimony bearing on credibility lies in the judge's discretion.").

Separately, Weekley asserts that the trial court erred in giving Jury Instruction No. 18 without the clarifying language or instruction suggested by Weekley. Even if there was error in the instructions, however, any error was

---

[3] Weekley also argues that Dr. Rosenberg never presented a sufficient basis under *Daubert* for his testimony as to credibility. Contrary to Weekley's assertions, the record is replete with evidence that Dr. Rosenberg provided a sufficient medical basis for his testimony as to Weekley's exaggeration of symptoms during his examination.

harmless and therefore does not warrant reversal. *Gantt v. City of Los Angeles*, 717 F.3d 702, 707 (9th Cir. 2013). The special verdict form in this case first required the jury to answer whether "Defendants violated [Weekley's] Fourth Amendment Constitutional Rights by unlawfully detaining him?" The jury answered "No" as to all Defendants. This question matches Jury Instruction No. 17, which told jurors that "In general, a seizure of a person for a stop is reasonable if, under all of the circumstances known to the officers at the time . . . the officers had a reasonable suspicion that the person seized was engaged in a traffic infraction," and explained "[u]nder California law, 'Every pedestrian upon a roadway shall yield the right-of-way to all vehicles upon the roadway so near as to constitute an immediate hazard.' A person on a skateboard is considered a pedestrian. A violation of this law constitutes an infraction." Once the jury concluded that Weekley was not unlawfully detained for the traffic infraction, as Jury Instruction No. 17 instructed, it is irrelevant whether the jury could have read Instruction No. 18 to allow Weekley's arrest in the absence of an initial lawful reason to detain.

For the foregoing reasons we **AFFIRM.**