**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

JERMAINE SMITH,
        *Defendant-Appellant.*

No. 10-10036

D.C. No.
2:09-cr-00114-KJD-
GWF-1

OPINION

Appeal from the United States District Court
for the District of Nevada
Kent J. Dawson, District Judge, Presiding

Argued and Submitted
November 2, 2010—San Francisco, California

Filed February 3, 2011

Before: Ronald M. Gould, Consuelo M. Callahan, Circuit
Judges, and Edward R. Korman, Senior District Judge.*

Opinion by Judge Gould

---

*The Honorable Edward R. Korman, Senior United States District
Judge for the Eastern District of New York, sitting by designation.

## COUNSEL

Franny A. Forsman, Federal Public Defender, Jason F. Carr (argued), Assistant Federal Public Defender, Las Vegas, Nevada, for defendant-appellant Jermaine Smith.

Daniel G. Bogden, United States Attorney, Robert L. Ellman, Appellate Chief, Drew Smith, Assistant United States Attorney (argued), District of Nevada, Las Vegas, Nevada, for plaintiff-appellee United States of America.

## OPINION

GOULD, Circuit Judge:

Appellant Jermaine Smith challenges the decision of the district court to deny his motion to suppress a firearm that was recovered from his person by a police officer. We must decide whether Smith's actions constituted submission to a police officer's show of authority, thereby triggering the Fourth Amendment's requirement that the officer have reasonable suspicion before effectuating a seizure. If Smith was seized, and if the seizure was not constitutional, then the recovered firearm should be suppressed as the fruit of the poisonous tree. *See United States v. Crawford*, 372 F.3d 1048, 1054 (9th Cir. 2004) (en banc). We hold that Smith was not seized until after he fled the presence of a police officer, and that Smith's flight under the circumstances gave the officer the reasonable suspicion required to effectuate a seizure. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I

In 2009, Smith crossed the street in front of a patrol car driven by Officer Tyler Dominguez of the Las Vegas Metropolitan Police Department.[1] Officer Dominguez activated his

---

[1]Smith and the government present partially different accounts of the facts. The district court did not make a factual finding about the truth of

patrol car's siren twice, pulled his car to the curb, exited the vehicle, and called for Smith to stop and come stand in front of the car. Smith turned toward the officer and asked either "Who? Me?" or "What for?" Officer Dominguez confirmed that he was addressing Smith, and repeated the command that Smith come stand in front of the car. According to Smith's testimony, although Smith had at first stepped toward the patrol car when he heard the siren, he then backed away after the officer got out of the vehicle and told Smith to stand in front of the car. Smith also said that, when he asked if he was under arrest, Officer Dominguez replied that Smith was not under arrest; however, the officer again ordered him to stand in front of the car. Smith continued to back away, and then turned and ran when he saw the officer reach for what Smith believed was a gun. Officer Dominguez pursued Smith on foot. The officer ordered Smith to stop, and threatened to use his Taser if Smith did not stop. Smith stopped involuntarily when he tripped and fell, allowing the officer to catch up with him. With Smith prone on the ground, Officer Dominguez approached him to place him in handcuffs and search him for weapons. While Dominguez approached, Smith stated that he had a gun in his pocket. Officer Dominguez recovered a Walther P99 nine-millimeter handgun from Smith's person.

Smith was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Smith pled not guilty, and filed a motion to suppress the firearm, which the district court denied. Smith then entered a conditional guilty plea pursuant to a written agreement, retaining the right to appeal the court's ruling on his unsuccessful motion to suppress the firearm. The district court sentenced Smith to seventy-one months in prison and three years of

Smith's testimony, but rather held that, even under Smith's version of the facts, he was not seized before he fled from the officer. We also conclude that, even under Smith's account of the facts, there was no seizure before Smith's flight.

supervised release. Smith timely appealed the denial of his motion to suppress the firearm.

## II

Smith contends that the district court erred when it denied his motion to suppress the firearm. We review the district court's denial of the motion to suppress de novo. *Crawford*, 372 F.3d at 1053. "Whether an encounter between a defendant and an officer constitutes a seizure is a mixed question of law and fact that we review de novo." *United States v. Washington*, 490 F.3d 765, 769 (9th Cir. 2007) (citing *United States v. Chan-Jimenez*, 125 F.3d 1324, 1326 (9th Cir. 1997).

Smith claims that his Fourth Amendment rights were violated because, when Officer Dominguez first attempted to stop him, the officer did not have a reasonable suspicion that Smith was engaged in wrongdoing. *See Terry v. Ohio*, 392 U.S. 1, 21-22 (1968) (holding that a police officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" a limited search of a suspect); *see also Washington*, 490 F.3d at 774 ("A seizure of a person is justified under the Fourth Amendment if law enforcement officers have reasonable suspicion that a person committed, or is about to commit, a crime. Without reasonable suspicion, a person may not be detained even momentarily." (citations and internal quotation marks omitted)). The district court agreed that Officer Dominguez did not have reasonable suspicion to seize Smith before Smith fled from the officer. But the district court held that Smith's Fourth Amendment rights were not violated by the attempted stop because Smith was not seized for Fourth Amendment purposes until after he fled. The district court also held in the alternative that, even if Smith was unlawfully seized during his initial encounter with the officer, his subsequent headlong flight, given the circumstances, was an intervening event that gave rise to a new finding of reasonable suspicion. The district court concluded that, because the flight

created reasonable suspicion, Officer Dominguez's pursuit, detention, and pat-down search of Smith did not violate Smith's Fourth Amendment rights.

We agree with the district court that Smith was not seized during his initial encounter with Officer Dominguez. Because Smith was not then seized, we need not decide whether the officer had reasonable suspicion justifying a Terry stop before Smith fled. Smith's Fourth Amendment rights were not violated by the attempted stop, even if the officer did not have reasonable suspicion, because the attempted stop was not a seizure for Fourth Amendment purposes.[2]

**[1]** Smith claims that he was seized when he paused momentarily, turned to and moved toward Officer Dominguez, and engaged in a short verbal exchange. However, a person is not "seized" within the meaning of the Fourth Amendment unless "by means of physical force or show of authority, his freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 553 (1980). In the absence of physical force, in order to constitute a seizure, an officer's show of authority must be accompanied by "*submission* to the assertion of authority." *California v. Hodari D.*, 499 U.S. 621, 626 (1991); *see also Brendlin v. California*, 551 U.S. 249, 254 (2007) ("[T]here is no seizure without actual submission; otherwise, there is at most an attempted seizure. . . ."). We have expressly "decline[d] to adopt a rule whereby momentary hesitation and direct eye contact prior to flight constitute submission to a show of authority." *United States v. Hernandez*, 27 F.3d 1403, 1407 (9th Cir. 1994).

**[2]** In this case, where the officer did not use physical force during the initial encounter, the question is whether Smith's actions constituted submission to Officer Domin-

---

[2]Because we decide that Smith was not seized prior to his flight, we need not reach the district court's alternative holding that Smith's flight was an intervening event that purged the taint of an illegal seizure.

guez's show of authority. The Supreme Court has held that a seizure does not occur where the subject does not yield. *Hodari D.*, 499 U.S. at 626. "[A] policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee . . . is no seizure." *Id.* By his own testimony, Smith did not yield to the officer's commands. Smith turned toward the officer, asked some questions, took a few steps towards the patrol car, but then backed away. Smith asked if he was under arrest, and Officer Dominguez told him "no." When the officer continued to issue commands, Smith turned and ran. Like the suspect in *Hodari D.* who "was not seized until he was tackled," Smith was not seized when he initially hesitated and engaged in a short verbal exchange with Officer Dominguez. *Id.* at 629.

**[3]** The Third Circuit reached a similar result in an analogous case, *United States v. Valentine*, 232 F.3d 350 (3d Cir. 2000). There, police officers approached the defendant in a parking lot and told him to place his hands on their patrol car. *Id.* at 353. The defendant asked the officers "Who, me?" and then attempted to flee. *Id.* The Third Circuit held that even if the defendant "paused for a few moments and gave his name, he did not submit in any realistic sense to the officers' show of authority, and therefore there was no seizure. . . ." *Id.* at 359. Like the defendant in *Valentine*, Smith did not submit in any realistic sense to Officer Dominguez's command that Smith stand in front of the patrol car. Because Smith did not submit to the officer's show of authority, and because he was not otherwise coerced or physically forced to submit, Smith was not seized within the meaning of the Fourth Amendment during his initial encounter with the officer.

### III

Although Smith was not seized initially, he was indisputably seized later, after he fled and was apprehended by Officer Dominguez. The officer had reasonable suspicion to effectuate a seizure after Smith's flight.

**[4]** The Supreme Court has held that a person's "head-long," "unprovoked" flight upon seeing a police officer, when it occurs in a high-crime neighborhood, is sufficient to establish reasonable suspicion that the person is involved in criminal activity. *Illinois v. Wardlow*, 528 U.S. 119, 124-25 (2000). We recognize that "[a]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." *Id.* at 124 (citing *Brown v. Texas*, 443 U.S. 47, 99 (1979)). But officers may take into account the context in which suspicious activity occurs "in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Wardlow*, 528 U.S. at 124.

**[5]** Here, Smith's initial reaction was not suspicious. Had he simply continued to go about his business, or walked away, Officer Dominguez would not have had reasonable suspicion to seize him. *See id.* at 125 ("[W]hen an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business." (citing *Florida v. Royer*, 460 U.S. 491, 498 (1983))). But, like the defendant in *Wardlow*, Smith did not simply go about his business. Instead, he launched into headlong flight. "Flight, by its very nature, is not 'going about one's business'; in fact, it is just the opposite." *Wardlow*, 528 U.S. at 125. "Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Id.* at 124.

**[6]** There may be circumstances where a person's flight has a perfectly innocent and reasonable explanation. Nevertheless, the circumstances here indicate that Smith's flight was sufficient to engender reasonable suspicion. It is undisputed that Smith was in a high-crime neighborhood during the events in question, that Officer Dominguez clearly identified himself as a police officer, and that Smith burst into headlong flight for no other reason than to evade Officer Dominguez. The officer's determination that Smith's sudden flight was

suggestive of wrongdoing was reasonable under these circumstances.

**[7]** Because Smith was not seized before he fled, and because Smith's flight under these circumstances created a reasonable suspicion that he was involved in criminal activity, Officer Dominguez did not violate Smith's Fourth Amendment rights, and the motion to suppress the firearm was correctly denied.

**AFFIRMED.**