FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | No. 12-30015 |
| | D.C. No. |
| v. | 3:11-cr-05238-RJB-1 |
| EDDIE RAY MCCLENDON, *Defendant-Appellant*. | OPINION |

Appeal from the United States District Court
for the Western District of Washington
Robert J. Bryan, Senior District Judge, Presiding

Argued and Submitted
February 8, 2013—Seattle, Washington

Filed April 19, 2013

Before: Raymond C. Fisher, Ronald M. Gould,
and Richard A. Paez, Circuit Judges.

Opinion by Judge Gould

# SUMMARY[*]

## Criminal Law

The panel affirmed a conviction for being a felon in possession of a firearm in a case in which the defendant argued that the discovery of a handgun was the product of an illegal search and an illegal seizure.

The panel held that because the defendant did not submit to the authority of the police who drew their guns and told him that he was under arrest, he was not seized before he tossed the gun away and was tackled by officers, and thus lost his ability to challenge the admissibility of the gun as fruit of an illegal seizure.

The panel held that the discovery of the gun was too attenuated from a concededly-illegal search of the defendant's backpack to warrant suppression, where the backpack search was not the but-for cause of the discovery of the handgun, and the defendant's act of walking away from the police after the police made it clear that they were trying to arrest him was an intervening event that purged any taint from the backpack search.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

William R. Michelman (argued), Lakewood, Washington, for Defendant-Appellant.

Helen J. Brunner (argued), Appellate Chief, Office of the United States Attorney for the Western District of Washington, Seattle, Washington; Jenny A. Durkan, United States Attorney, and Jesse Williams, Special Assistant United States Attorney, Office of the United States Attorney for the Western District of Washington, Tacoma, Washington, for Plaintiff-Appellee.

## OPINION

GOULD, Circuit Judge:

Eddie Ray McClendon appeals his conviction pursuant to a conditional plea agreement for one count of felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He contends that the district court erroneously denied his motion to suppress the handgun that formed the basis for his conviction because the discovery of that handgun was the product of an illegal search and an illegal seizure. We must first decide whether McClendon was seized in violation of the Constitution by the police before he tossed the gun away. If McClendon was seized unconstitutionally, then the recovered handgun should be suppressed as a fruit of the poisonous tree. *See United States v. Smith*, 633 F.3d 889, 891 (9th Cir. 2011). If we conclude that there was no illegal seizure before McClendon threw the gun, we next must decide whether discovery of the handgun could fairly be considered a fruit of the illegal backpack search, requiring its

suppression. *See Wong Sun v. United States*, 371 U.S. 471, 484–87 (1963). Because we hold that McClendon was not seized before discarding the handgun and that the handgun was not a fruit of the illegal backpack search, we reject McClendon's claim and affirm.

## I

At around 2:20 a.m. on a spring night, two police officers responded to a 911 call placed by an elderly disabled homeowner who feared a possible invader. The homeowner reported that an unknown vehicle was parked in his driveway with its engine and lights off and that someone had knocked on his door. The homeowner was so frightened that he had armed himself with a crowbar. When police arrived at the scene, a nervous woman, who police thought was under the influence of methamphetamine, emerged from the driver's seat of the car. The woman, later identified as Rosemary Johnson, said that the car ran out of gas and that McClendon, who she said had been in a lot of trouble before, had left to get more gas. The story about running out of gas quickly was shown by events to be incredible: The car's ignition was turned on. The car started.

The woman consented to a search of the car. Before the search commenced, the woman warned the officers that there was a machete in the car that belonged to McClendon. The officers at once found the machete on the floor under the front passenger's seat. They also found several types of drugs and drug paraphernalia in the woman's purse, including a cigarette box containing pills, several one-inch-by-one-inch baggies coated with a white crystalline residue, and a

smoking pipe coated with the same residue.[1]  The woman claimed ownership of some, but not all, of the drugs and drug-related items, and she was arrested.

The officers then found a backpack behind the front passenger's seat of the car.  The woman said that it belonged to McClendon.  Without consent from the non-present McClendon, one of the officers searched the backpack.  This search revealed a sawed-off shotgun with a filed-off serial number, ammunition for the gun, a black wig, two walkie-talkies, binoculars, a zippered case containing two prescription pills, and a Safeway receipt with McClendon's name on it.

Police then ran a records check on the name "Eddie McClendon" and found one person matching the physical description given by Ms. Johnson; that person had previously been convicted of the felony of riot with a deadly weapon. While the records check was being performed, back-up officers, including a K-9 unit, arrived at the scene, and the police went to look for McClendon with the aim of arresting him.

Spotting a man matching McClendon's description walking down the street about 50 or 60 yards away, a group of officers approached him.  When the suspect was within earshot, one deputy asked the man if he was Eddie.  The man replied, "Yes, that's me," and turned and began to walk away. The officers then drew their guns, told McClendon he was under arrest, and ordered him to show his hands.   But

---

[1] The pills were identified as the narcotics Clonazepam and Lorazepam and the antidepressant Trazodone.  The residue in the pipe and baggies field tested positive for methamphetamine.

McClendon did not comply. He did not stop. He did not show his hands. He continued to walk away. When the officers got still closer to McClendon, McClendon took his hands and "pushed them down towards his waistband and [again] turned away from [the officers]," making a flinging motion. The officers then closed the distance and forcibly arrested McClendon, tackling him and placing him in handcuffs. They found a loaded silver handgun, still warm to the touch, on the grass a few feet away. McClendon denied tossing the gun and said that the backpack was not his. At the time of McClendon's arrest, he was wearing a black knit cap, which police found to be a rolled-up ski mask, one with eye holes and a mouth hole. But McClendon had no skis. And there was no snow.

McClendon was indicted on two counts of felon in possession of a firearm and ammunition (for the shotgun and for the handgun) in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and on one count of possession of an unregistered firearm (for the shotgun) in violation of 26 U.S.C. §§ 5861(d) and 5871. He filed a pretrial motion to suppress "all evidence obtained directly and/or derived from the unlawful search and seizure of . . . [the] backpack," including the handgun. After several hearings and initial rulings, the district court found that the search of the backpack was unlawful, and granted the motion to suppress the evidence in the backpack. But the court denied the motion to suppress the handgun, reasoning that the police likely had probable cause to arrest McClendon and did not effectuate the arrest until after McClendon discarded the gun. Alternatively, the district court reasoned that police had ample grounds to stop McClendon under *Terry v. Ohio*, 392 U.S. 1, 22 (1968) (holding that an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when he or she has reasonable suspicion

that criminal activity is afoot). McClendon pleaded guilty pursuant to a conditional plea agreement to one count of felon in possession of a firearm, retaining the right to appeal the court's ruling on his unsuccessful motion to suppress the handgun. The other two counts were dismissed. McClendon was sentenced to seventy-two months in prison and three years of supervised release. McClendon timely appealed his conviction, challenging the district court's denial of his motion to suppress the handgun.[2]

## II

McClendon contends that the district court erred when it denied his motion to suppress the handgun because discovery of the gun was the product of his seizure, which in turn was prompted by the illegal search of his backpack. *See United States v. McCarty*, 648 F.3d 820, 839 (9th Cir. 2011) (stating that "fruits of an unlawful search cannot provide probable cause for an arrest"). The Government concedes that the officers "clearly sought to arrest Eddie Ray McClendon based on the fruits of . . . the unlawful search of [the] backpack." But the Government contends, among other things, that McClendon was not yet seized when he discarded the handgun, making the abandoned gun admissible under *California v. Hodari D.*, 499 U.S. 621, 625–29 (1991) (holding that a person is not seized for purposes of the Fourth Amendment when he or she fails to submit to a law enforcement officer's show of authority and is not physically

---

[2] The Government does not contend that the search of McClendon's backpack was lawful. That is not surprising because, as the district judge noted, no exigency impelled police to search the backpack without a warrant or the owner's consent and Ms. Johnson had no authority to consent on McClendon's behalf.

touched by the officers). We ordered supplemental briefing on this issue. We have jurisdiction under 28 U.S.C. § 1291, and we review *de novo* the district court's denial of a motion to suppress evidence. *United States v. Caseres*, 533 F.3d 1064, 1067 (9th Cir. 2008).

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. Searches and seizures that offend the Fourth Amendment are unlawful and evidence obtained as a direct or indirect result of such invasions is considered "fruit of the poisonous tree" and is inadmissible under the exclusionary rule. *See Wong Sun*, 371 U.S. at 484–87. In deciding whether evidence is the product of an unlawful seizure, we first determine whether the defendant was seized at the time the handgun was discarded. *See United States v. Hernandez*, 27 F.3d 1403, 1406–07 (9th Cir. 1994); *see also Smith*, 633 F.3d at 892. If so, we then consider whether the seizure was unlawful. *See Hernandez*, 27 F.3d at 1406–07; *see also Smith*, 633 F.3d at 892.

The general rule is that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). This determination is "a *necessary*, but not a *sufficient*, condition for seizure." *Hodari D.*, 499 U.S. at 628. In addition, some form of "touching or submission" is also required. *Id.* at 626–27; *see also Brendlin v. California*, 551 U.S. 249, 254 (2007) ("A police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is

concerned."); *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 n.7 (1998) ("Attempted seizures of a person are beyond the scope of the Fourth Amendment.").

Precedent instructs that where an individual flees from police, no submission occurs until the defendant is physically subdued. *See Hodari D.*, 499 U.S. at 629 (concluding that a young man running from police was not seized until he was tackled); *see also Brendlin*, 551 U.S. at 262 ("[A] fleeing man is not seized until he is physically overpowered, but one sitting in a chair may submit to authority by not getting up to run away."). But we have not addressed a situation where, as here, a defendant walks away from and refuses to comply with the commands of officers who are attempting to arrest him, instead reaching into his waistband.[3] We look to the totality of the circumstances to determine whether McClendon submitted to authority such that he was seized before discarding the gun. *See United States v. Washington*, 490 F.3d 765, 773–74 (9th Cir. 2007).

McClendon contends that his case is distinguishable from *Hodari D.* because he submitted to authority when he identified himself in response to the officer's inquiry. But we

---

[3] The Third Circuit, however, has concluded that there was no submission to a show of authority where a defendant failed to raise his hands in compliance with a police directive, "moved his hands toward his waistband, and ultimately retreated into the house." *United States v. Waterman*, 569 F.3d 144, 146 (3d Cir. 2009) (also holding that being held at gunpoint falls short of the touching required to establish a seizure under *Hodari D.* where the defendant does not submit to a show of authority). The Sixth Circuit likewise held that efforts to walk or "push" through a doorway past police officers "do not constitute submission to a show of authority." *United States v. Smith*, 594 F.3d 530, 539 (6th Cir. 2010). We find these cases persuasive.

have previously "decline[d] to adopt a rule whereby momentary hesitation and direct eye contact prior to flight constitute submission to a show of authority."    *Smith*, 633 F.3d at 893 (quoting *Hernandez*, 27 F.3d at 1407); *see also United States v. Baldwin*, 496 F.3d 215, 218 (2d Cir. 2007) ("[T]o comply with an order to stop . . . a suspect must do more than halt temporarily . . . ."). And in *United States v. Smith*, we held that there was no submission or seizure when a defendant momentarily hesitated before fleeing from police. 633 F.3d at 891, 893. In that case, the defendant initially stepped toward a patrol car and responded to an officer's request to stop by saying either "Who? Me?" or "What for?" before bolting. *Id.* at 891. Applying our rule from *Hernandez* and *Smith*, we hold that McClendon's initial response of answering "Yes, that's me" was not sufficient to show that he had submitted to the officers' authority.[4]

McClendon next contends that he was seized when the officers drew their guns and told him that he was under arrest. McClendon stresses the nature of the force used against him and cites to *United States v. Stephens*, where we held that a man who remained seated after police officers boarded and positioned themselves in the front, middle, and back of a bus was seized even though the officers informed the passengers that no one was under arrest and that anyone who wished to leave was free to do so. 206 F.3d 914, 916–18 (9th Cir.

---

[4] This position is reinforced by several cases from the Third Circuit. *See, e.g.*, *United States v. Smith*, 575 F.3d 308, 316 (3d Cir. 2009) ("Two steps towards the hood of a car does not manifest submission to the police officers' show of authority."); *United States v. Valentine*, 232 F.3d 350, 353, 359 (3d Cir. 2000) (holding that momentary compliance was not enough to trigger a seizure where three men walked away from police and one then responded "Who, me?" before charging toward an officer in an attempt to flee).

2000). In that case, we reasoned that the defendant, who did submit, was placed in a Hobson's choice because he had only two options: (1) get off the bus and potentially give the officers reasonable suspicion to stop him or (2) stay on the bus and answer the officers' questions. *Id.* at 917. But McClendon misses the point of *Hodari D.* Like the defendant in *Stephens*, a reasonable person in McClendon's shoes would not have felt free to leave. The critical difference is that, faced with such authority, McClendon did not submit. Instead, although he was ordered at gunpoint to stop and put up his hands, McClendon turned and walked away, not raising his hands. *See Hodari D.*, 499 U.S. at 626 ("[A] policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee. . . . is no[t] [a] seizure."); *cf. United States v. Wood*, 981 F.2d 536, 540–41 (D.C. Cir. 1992) (holding that defendant submitted to authority when, upon hearing the command to "halt right there," he froze in his tracks, dropped a pistol on the ground, and did not otherwise ignore orders). McClendon did not display any intention of submitting to the officers' authority.

McClendon also did not face a Hobson's choice because the officers had already determined that they had probable cause to arrest him and had communicated their intent in no uncertain terms to McClendon by telling him he was under arrest and to raise his hands. McClendon knew that he would have been arrested regardless of his actions. Yet he refused to submit to police authority.

McClendon argues that because he walked away from the police, instead of running, he sufficiently submitted to their authority, distinguishing himself from the suspect in *Hodari D*. But McClendon's act of walking away still showed a failure to submit to the authority of the police,

particularly when coupled with McClendon's refusal to raise his hands. *See Hernandez*, 27 F.3d at 1405, 1407 (holding that a man who reached into his pants to discard a gun while fleeing "never submitted to authority"). Moreover, McClendon's act of reaching into his pants posed a threat to the officers. McClendon never submitted to police authority before he was tackled. Like the suspects in both *Smith* and *Hodari D.*, McClendon was not physically touched during his initial encounter with the police and, because he did not submit to the officers' show of authority, he was not seized until he was brought to the ground. *See Smith*, 633 F.3d at 893; *see also Hodari D.*, 499 U.S. at 629.

McClendon also argues that the police officers were acting illegally when they raised their guns and declared that he was under arrest and therefore he had no obligation to submit to their illegal authority.[5] Assuming, without deciding, that the officers initially had no authority to stop or arrest McClendon, we still conclude McClendon was not seized until he was physically apprehended. *See Smith*, 633 F.3d at 892 (declining to reach the question of whether police had reasonable suspicion to stop the defendant because defendant did not submit to a show of police authority); *see also United States v. Garcia*, 516 F.2d 318, 319–20 (9th Cir. 1975) (holding that "where the illegal conduct of the police is only a necessary condition leading up to the suspect's act [of voluntarily fleeing], no taint attaches to his conduct"). Regardless of how unreasonable the officers' actions were, and regardless of how reasonable it was for McClendon to

---

[5] Because it is irrelevant to the admissibility of the handgun, which was discarded before the police tackled McClendon, McClendon does not question, and we do not address, whether there was probable cause for his eventual seizure.

feel restrained, he did not submit to authority and therefore was not seized until he was tackled. *See Hodari D.*, 499 U.S. at 626. The rule of *Hodari D.* creates incentives for future defendants to submit to asserted police authority, thereby avoiding an escalation of conflict that could have lethal consequences. *See Tennessee v. Garner*, 471 U.S. 1, 11 (1985) (holding that deadly force may be used if necessary where an officer has probable cause to believe the suspect poses a significant threat of death or serious physical injury). This was one of the aims of *Hodari D. See* 499 U.S. at 627 ("Unlawful orders will not be deterred, moreover, by sanctioning through the exclusionary rule those of them that are *not* obeyed.").

Because McClendon did not submit to the authority of the police, he was not seized before he was tackled and thus lost his ability to challenge the admissibility of the handgun as a fruit of an illegal seizure.[6]

## III

Although we have concluded that McClendon was not seized until after he tossed his gun, we must also consider if the handgun should have been suppressed as a fruit of the illegal search of McClendon's backpack. *See Wong Sun*, 371 U.S. at 484–87. We reject this argument for two reasons.

First, the search of McClendon's backpack was not the but-for cause of the discovery of the handgun. One of the officers testified that he "[a]bsolutely" would have gone

---

[6] Because there was no seizure until after McClendon had discarded the handgun, we do not examine whether police had reasonable suspicion or probable cause before then.

looking for McClendon to talk to him regardless of the search of the backpack. He would have looked for McClendon "[b]ecause McClendon would be a person of interest in this incident . . . . [and] [a]t the very least, [the officer] would have wanted to find . . . Mr. McClendon while [the officer] furthered [his] investigation." The circumstances supported this testimony: police had been called to the scene by a frightened homeowner, a car was parked in a resident's driveway late at night, the car was not out of gas as its occupant stated, a machete belonging to McClendon was found in the car, and illegal drugs and drug paraphernalia were found in the occupant's purse. The judge accepted the officer's testimony as credible. Because the testimony shows that the illegal search of the backpack was not the but-for cause of the discovery of the handgun, we reject McClendon's argument that the handgun should be excluded as a fruit of the illegal backpack search. *See Segura v. United States*, 468 U.S. 796, 815 (1984) ("[O]ur cases make clear that evidence will not be excluded as 'fruit' unless the illegality is at least the 'but for' cause of the discovery of the evidence. Suppression is not justified unless the challenged evidence is in some sense the product of illegal governmental activity." (internal quotation marks omitted)).

Second, even if the police were motivated to search for McClendon because of what they found in the backpack, we would still conclude that the handgun was not a fruit of the illegal backpack search under the principle established in *United States v. Garcia.* 516 F.2d at 319–20. In *Garcia*, a border patrol officer directed a motorist to a secondary border checkpoint based on the motorist's unusual demeanor and characteristics of the motorist's vehicle. *Id*. at 319. The motorist drove to the secondary checkpoint, parked momentarily, and then sped off. *Id*. A car chase ensued and

the agents ultimately stopped the motorist and found marijuana in the car. *Id*. We assumed that the stop at the secondary checkpoint was an illegal seizure, but concluded that the motorist's decision to flee was an intervening circumstance that purged the primary taint of the illegal seizure. *Id*. at 319–20. Here, McClendon's act of walking away from the police after the police made it clear that they were trying to arrest him also was an intervening event that purged any taint from the prior backpack search.

For these reasons, we conclude that the discovery of the handgun was too attenuated from the backpack search to have been the fruit of that illegal act.

## IV

Because we hold that the handgun was not a fruit of a seizure or a fruit of the illegal backpack search, the district court did not err in denying McClendon's motion to suppress the handgun. Our reasoning is different from that of the district court, but we may affirm on any basis supported by the record and do so here. *See United States v. Pope*, 686 F.3d 1078, 1083 (9th Cir. 2012).

**AFFIRMED.**