Jahmez A. AMILI II and Charles A. Chappelle II, Plaintiffs,

v.

CITY OF TUKWILA, et al., Defendants.

Case No. C13–1299–JCC.

United States District Court, W.D. Washington, at Seattle.

Signed July 10, 2014.

Felix G. Luna, Michael Simon Wampold, Tomas A. Gahan, Peterson Wampold Rosato Luna Knopp, Seattle, WA, for Plaintiffs.

Mary Ann McConaughy, Richard B. Jolley, Keating Bucklin & McCormack, John Turner Kugler, Turner Kugler Law, PLLC, Seattle, WA, Shelley M. Kerslake, Kenyon Disend, Issaquah, WA, for Defendants.

## ORDER

JOHN C. COUGHENOUR, District Judge.

This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 17) and Defendants'

Cross Motion for Summary Judgment on the Fourth Amendment Seizure Issue (Dkt. No. 23). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS Plaintiffs' motion (Dkt. No. 17) and DENIES Defendants' cross-motion (Dkt. No. 23) for the reasons explained herein.

## I. BACKGROUND

This case concerns Defendant Officer Zachary Anderson's stop and eventual arrest of Plaintiffs in the early morning hours of May 12, 2012. Officer Zachary Anderson is a police officer with the Tukwila Police Department. (Anderson Dep. 10–11 (Dkt. No. 18, Ex. 1 at 6).) Plaintiffs are African American brothers who were walking to their mother's house. (Dkt. No. 17 at 2.)

At approximately 2:40 a.m. on that day, officers received a 911 call about a reported fight on a private party bus in the parking lot of the Southcenter Mall. (Dkt. No. 17 at 2; Dkt. No. 23 at 2.) Officer Anderson left the police station to drive toward the mall. (Dkt. No. 17 at 2; 23 at 3.) As Officer Anderson was driving, he saw Plaintiffs walking along an overpass. (Dkt. No. 17 at 2; Dkt. No. 23 at 3.) There was no sidewalk on the side of the road on which they were walking, although there was a sidewalk on the other side of the bridge. (Anderson Dep. 35:10–13 (Dkt. No. 25, Ex. B at 6).)

Officer Anderson made a U-turn and stopped his car on the other side of the overpass. (Dkt. No. 17 at 2; Dkt. No. 23 at 4.) He exited his car and told them that he was investigating a fight, that he needed them to come to his car, and that they weren't free to leave. (Dkt. No. 17 at 2; Dkt. No. 23 at 4.) Plaintiffs, using expletives, said that they hadn't done anything and refused to come to his car. (Dkt. No.

17 at 2–3; Dkt. No. 23 at 4–5.) They continued walking. (Dkt. No. 17 at 3; Dkt. No. 23 at 5.) Officer Anderson then informed Plaintiffs that they were under arrest for obstructing a law enforcement officer. See Wash. Rev.Code 9A.76.020(1). (Dkt. No. 17 at 3; Dkt. No. 23 at 5.) Officer Anderson pointed his taser gun at Plaintiffs from across the road. (Dkt. No. 17 at 3; Dkt. No. 23 at 6.) At this point, Officer Prasad arrived, followed seconds later by Officer Erik Kunsmann. (Dkt. No. 17 at 3; Dkt. No. 23 at 6.) Plaintiffs were then apprehended.

Plaintiffs filed this 42 U.S.C. § 1983 action on July 22, 2013 listing two causes of action: unconstitutional use of excessive force, and violations by the city and police chief. (Dkt. No. 1.) Both Plaintiffs and Defendants move for partial summary judgment on whether the initial seizure by Officer Anderson was unlawful. (Dkt. No. 17 at 2; Dkt. No. 23 at 2.) Whether excessive force was used is not an issue on summary judgment. (Dkt. No. 23 at 20.)

## II. DISCUSSION

### A. Standard on Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Material facts are those that may affect the case's outcome. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine if there is enough evidence for a reasonable jury to return a verdict for the nonmoving party. See id. at 249, 106 S.Ct. 2505. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party, and all justifiable inferences must be drawn in the nonmovant's favor. See Johnson v. Poway Uni-

*fied Sch. Dist.,* 658 F.3d 954, 960 (9th Cir.2011).

### B. Section 1983 Claims

Under 42 U.S.C. § 1983, a plaintiff may hold police officers personally liable for violations of the plaintiff's constitutional rights. The doctrine of qualified immunity, however, protects government officers "performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In determining whether an officer's actions are protected by qualified immunity, a court asks two questions in whatever order it chooses: "(1) whether the alleged misconduct violated a right and (2) whether the right was clearly established at the time of the alleged misconduct." *Maxwell v. County of San Diego,* 697 F.3d 941, 947 (2012).

### C. Whether The Alleged Misconduct Violated A Right

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. On the record here, the Court must first determine when a seizure occurred and then determine whether that seizure was unreasonable.

#### 1. When the seizure occurred

"[A] person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." *United States v. Mendenhall,* 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). The parties disagree about when the encounter became a seizure. Plaintiffs contend they were seized when Officer Anderson ordered them to come to his car and told them that they were not free to leave. (Dkt. No. 17 at 9) (citing *Mendenhall,* 446 U.S. at 554, 100 S.Ct. 1870 (seizure occurs once "reasonable person would have believed that he was not free to leave"); *State v. Richardson,* 64 Wash.App. 693, 825 P.2d 754 (1992) (same).) Defendants argue that no Fourth Amendment seizure occurred "until [Plaintiffs] were physically subdued by officers." (Dkt. No. 23 at 13) (citing *Mendenhall,* 446 U.S. at 553, 100 S.Ct. 1870 (no seizure until "freedom of movement is restrained"); *Brendlin v. California,* 551 U.S. 249, 254, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007) (absent "actual submission" there is only an "attempted seizure"); *United States v. Smith,* 633 F.3d 889, 893 (9th Cir.2011)). In Defendants' view, Plaintiffs evaded any "effective seizure" until they were physically arrested, at which point their "active resistance" contributed to the probable cause necessary for their arrest. (Dkt. No. 23 at 14.)

There is no dispute that Plaintiffs initially continued walking away from Officer Anderson. There is also no dispute, however, that as they were walking away Officer Anderson pointed a taser at them, told them to stop, and they stopped. (Prasad Dep. 43, 44:4–8 (Dkt. No. 25 at 7–8) (When Officer Prasad arrived, Officer Anderson was pointing a taser at Plaintiffs; they were asked to stop several times; they stopped within "a few seconds" of Prasad's arrival).); (Anderson Dep. at 64:10–18, 67 (Dkt. No. 25–2 at 3–4) (Plaintiffs "continued walking," Anderson "told them at that point that they were under arrest for obstructing a public servant, and took [his] taser out," and decided to wait to make contact with them until other officers arrived).) As described by Defendants: "To keep the men from simply walking away

while he waited for back-up officers to arrive, Officer Anderson took out his taser and held plaintiffs at taser-point." (Dkt. No. 23 at 6, lines 2–4.) Even assuming that Officer Anderson's statement that Plaintiffs were not free to leave did not constitute a seizure, they were effectively seized when they stopped at his command while having a taser pointed at them. *Cf. Brendlin v. California,* 551 U.S. 249, 254, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007) ("no seizure without actual submission"); *Mendenhall,* 446 U.S. at 555, 100 S.Ct. 1870 (no seizure when DEA agents wore no uniforms, displayed no weapons, and issued no commands); *United States v. Smith,* 633 F.3d 889, 892–93 (2011) (no seizure when suspect engaged in "short verbal exchange" with officer before turning around and running away). The question thus becomes whether this seizure was constitutional.

*2. Reasonable Suspicion*

■■■ The parties agree that the reasonableness of the seizure depends on whether Officer Anderson's seizure of Plaintiffs was a justified investigatory stop under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). (Dkt. No. 17 at 8; Dkt. No. 23 at 10–11 (citing *Terry* and *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), in stating "That is exactly what Officer Anderson was trying to do").) "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *see also Terry,* 392 U.S. at 21, 88 S.Ct. 1868 (recognizing government interest in "approach[ing] a person for purposes of investigating possibly criminal behavior"). Courts must consider the "totality of the circumstances" to determine whether the police officer had "a particularized and objective basis for suspecting legal wrongdoing." *See United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (internal quotation marks omitted); *United States v. Thompson,* 282 F.3d 673, 678 (9th Cir.2002) ("[S]pecific, articulable facts ... together with objective and reasonable inferences, [must] form the basis for suspecting that the particular person detained is engaged in criminal activity." (internal quotation marks omitted)).

■■■ The Court concludes that the totality of the circumstances here gave Officer Anderson no reasonable basis for detaining Plaintiffs. Defendants rely heavily on Plaintiffs' apparent lack of cooperation—i.e., their walking away—in arguing that Anderson had reasonable suspicion for seizing them.[1] (Dkt. No. 23 at 12–14.) This reliance is misplaced. Although Defendants are not entirely clear on this point, they argue that Plaintiffs were not initially seized (Dkt. No. 23 at 13), which would suggest that Officer Anderson initiated the stop as a consensual encounter. *See United States v. White,* 584 F.3d 935, 944–45 (10th Cir.2009) ("[T]he Supreme Court has recognized three types of police-citizen encounters: consensual encounters, investigative detentions, and arrests."). During a consensual encounter, individuals may lawfully choose not to cooperate with a police officer, and that disregard does not create reasonable suspicion. *Florida v. Bostick,* 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) ("We have consistently held that a refusal to cooperate, without more, does not furnish the

---

**1.** The following analysis would apply regardless of whether the seizure occurred when Officer Anderson said they were not free to leave or when he had them stopped at taser-point.

minimal level of objective justification needed for a detention or seizure."); *Mendenhall*, 446 U.S. at 554, 100 S.Ct. 1870 (no seizure "[a]s long as the person to whom questions are put remains free to disregard the questions and walk away"); *United States v. Smith*, 633 F.3d 889 (9th Cir. 2011) ("Had [Defendant] simply continued to go about his business, or walked away [upon being commanded to stand in front of police car], [then the police officer] would not have had reasonable suspicion to seize him."); *United States v. Fuentes*, 105 F.3d 487, 490 (9th Cir.1997) ("Mere refusal to consent to a stop or search does not give rise to reasonable suspicion or probable cause."). Even if the stop was initiated as an investigative stop, Plaintiffs' interactions during the encounter would not contribute to the stop's reasonableness, because reasonable suspicion must exist when the stop is initiated. *See United States v. Thomas*, 863 F.2d 622, 625 (9th Cir.1988) ("Founded suspicion must exist at the time the officer initiates the stop.").

 True, an individual's flight from police may contribute to an officer's reasonable suspicion, *see Smith*, 633 F.3d at 893–94, but there is no suggestion that Plaintiffs attempted to flee. By Officer Anderson's own description, Plaintiffs were walking northbound, and after speaking with him, they "continued walking northbound." (Anderson Dep. at 64, 67 (Dkt. No. 25, Ex. B at 8).) "Flight, by its very nature, is not 'going about one's business,'." *Illinois v. Wardlow*, 528 U.S. 119, 125, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), yet "going about their business" is precisely what Plaintiffs continued doing. Defendants imply—although do not state explicitly and cite no case law in support—that Plaintiffs' use of expletives is somehow relevant. (Dkt. No. 23 at 12.) The use of expletives does not transform an otherwise-legal refusal to answer questions into

the basis for a legitimate *Terry* stop. *See United States v. Poocha*, 259 F.3d 1077, 1082 (2001) ("We have repeatedly emphasized that 'while police, no less than anyone else, may resent having obscene words and gestures directed at them, they may not exercise the awesome power at their disposal to punish individuals for conduct that is not merely lawful, but protected by the First Amendment.' ") (citing *Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th Cir.1990)).

The Washington obstruction statute does not change this analysis, nor do Defendants suggest that it does. Instead, Defendants merely note "that the obstruction statute furnishes authority for arrest *if an officer has the requisite reasonable suspicion*, and the subject refuses to comply." (Dkt. No. 28 at 3 (emphasis added).) *See also State v. Barnes*, 96 Wash.App. 217, 978 P.2d 1131, 1136 (1999) (statute requires citizens to comply with officers discharging lawful official duties and "[a]n unlawful detention is by definition not part of lawful police duties"). The Washington statute therefore does not assist this Court in assessing whether "requisite reasonable suspicion" existed initially.

Having determined that Plaintiffs walking away could not contribute to the reasonable-suspicion calculus, the next determination is what factors did contribute to that calculus. In Defendants' words, considerations justifying Officer Anderson's actions are:

· Very late evening hours, close to 3 a.m.;

· Plaintiffs' presence in the near vicinity to reported fight activity;

· Timing of plaintiffs' presence at location consistent with timing of report;

· Plaintiffs walking away from, not toward, the reported fight location;

· No reports of others in area;

· Fight activity reportedly associated with a 'party bus' raising possibility of alcohol consumption;

· Credible, self-identifying report party, mall security;

· Plaintiffs' presence on the fog line near the travel lane when a sidewalk was available on the other side of the street;

· 'Disarray' of plaintiffs' clothing consistent with possible involvement in a confrontation.

(Dkt. No. 23 at 12.)

Several of these considerations deserve little or no weight. For example, at the time of the incident, Officer Anderson did not know the identity of the person who reported the fight (Anderson Dep. 42:13–22 (Dkt. No. 18, Ex. 1 at 14)), so the credibility of the reporting party is irrelevant in considering whether there was an objective basis for reasonable suspicion, *see Devenpeck v. Alford,* 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004) (facts known by an officer are relevant in determining whether probable cause existed); *Moreno v. Baca,* 431 F.3d 633, 639 (9th Cir.2005) (facts that could render a search reasonable are irrelevant if unknown to the officer at the time). Next, the Court is perplexed by Defendants' ungrammatical statement: "[f]ight activity reportedly associated with a 'party bus' raising possibility of alcohol consumption." Defendants provide no reasoning to suggest how this general proposition—that party buses are generally associated with alcohol consumption—could contribute to a particularized basis for suspecting someone walking on a street of criminal activity. The undisputed evidence is that Officer Anderson had no awareness of whether Plaintiffs had been consuming alcohol until he smelled alcohol as he approached them, "moments before the takedown." (Anderson Dep. 22:25–23:3 (Dkt. No. 18,

Ex. 1 at 9).) Any suspected alcohol use or connection to a party bus is therefore irrelevant in considering the reasonableness of the seizure, which occurred when Officer Anderson first held Plaintiffs at taserpoint.

Turning to consideration of Plaintiffs' appearance, the Court notes that Anderson's explanation of what he meant by "disarray of plaintiffs' clothing" is that "it appeared kind of wrinkled, a little out of sorts . . . . kind of tussled in some sort of manner based on some of the kind of wrinkles that I recall." (Anderson Dep. 53:5–8 (Dkt. No. 18, Ex. 1 at 16).) There is no suggestion that the "disarray" included blood stains or tears, nor did Officer Anderson have any information about identifying characteristics for any individuals involved. Neither do Defendants suggest how the fact that Plaintiffs were not walking on the sidewalk demonstrates that they had assaulted someone. Finally, although Plaintiffs' temporal and physical proximity is the strongest factor in Defendants' favor, even that consideration's relevance is weakened somewhat by the fact that the reported incident was on a moving bus, not at a fixed location like most "crime scenes."

With these qualifications, Defendants' argument reduces to these observations: it was late at night in an area that, like most areas at 3 a.m., did not have many people; Plaintiffs were in a location and walking in a direction consistent with proximity to a reported fight on a bus; they were not walking on the sidewalk; and their clothing was wrinkled. Considering all these factors together, they do not suggest that Plaintiffs were engaged in criminal activity or were about to be engaged in criminal activity. *Cortez,* 449 U.S. at 417–18, 101 S.Ct. 690. Even assuming that a report of a "fight" would justify an officer searching for a perpetrator of an "assault," courts

have repeatedly rejected mere proximity or general appearance as the basis for a detention. *See, e.g., Moreno,* 431 F.3d at 643 (nervous behavior and walking away from officers in a high-crime area did not create "reasonable suspicion"); *United States v. Montero–Camargo,* 208 F.3d 1122, 1129 (9th Cir.2000) ("particularized suspicion" not satisfied by broad or general profiles); *Bradford v. City of Seattle,* 557 F.Supp.2d 1189, 1198 (W.D.Wash.2008) (no reasonable suspicion when a 911 call predicted a fight between teen groups and officer observed a young man jogging past the patrol car wearing a colored shirt that could have identified him as being part of one group). Proximity to a reported fight that occurred on a moving bus late at night does not create a reasonable suspicion of criminal activity, even if an individual looks disheveled or "kind of wrinkled."

### D. Whether the Right Was Clearly Established

■■■■■ Having concluded that Plaintiffs have established the violation of a constitutional right, the Court next considers whether the right was clearly established. "Qualified immunity shields an officer from suit when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted." *Brosseau v. Haugen,* 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004). The plaintiff bears the burden of demonstrating that the right was clearly established. *See Collins v. Jordan,* 110 F.3d 1363, 1369 (9th Cir.1997). Contrary to Defendants' suggestion (Dkt. No. 23 at 20), there need not be a case with this precise factual scenario in order to deny qualified immunity. *See Torres v. City of Madera,* 648 F.3d 1119, 1129 (9th Cir.2011) ("[W]e have repeatedly stressed that officials can still have 'fair warning' that their conduct violates established law 'even in novel factual

circumstances[.]' ") (citing *Hope v. Pelzer,* 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)).

■■■■ The relevant facts are undisputed, and the Court concludes that the law was clearly established that this detention would be illegal. Courts are unequivocal— and have been for decades—that there must be "a particularized and objective basis for suspecting legal wrongdoing." *See United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (internal quotation marks omitted); *Cortez,* 449 U.S. at 417–18, 101 S.Ct. 690 ("Based upon [the] whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity."); *Terry,* 392 U.S. at 22, 88 S.Ct. 1868. Investigative stops are justified only if criminal activity may be afoot—if the officer suspects "that the person stopped is, or is about to be, engaged in criminal activity." *Cortez,* 449 U.S. at 417–18, 101 S.Ct. 690; *Navarette v. California,* —— U.S. ——, 134 S.Ct. 1683, 1690, 188 L.Ed.2d 680 (2014) (quoting *(Cortez )*). The reasons to suspect Plaintiffs of being criminals here, however, were tenuous at best. *See, e.g., Moreno,* 431 F.3d at 643 (nervous behavior and walking away from officers in a high-crime area did not create "reasonable suspicion"). *United States v. Hanson,* 138 Fed.Appx. 39 at *2 (9th Cir. 2005) (no particularized suspicion when defendants were in general area where two others had been attempting to smuggle marijuana: "The remoteness of the area, the proximity to the border, and the early hour [were] insufficient to justify the stop."). There was a non-specific report of a "fight" that identified no particular individuals, and Plaintiffs' only connection to that nebulously criminal incident was proximity and a general appearance of "disarray." Even Defendants do not suggest

how these facts could create a particularized suspicion that Plaintiffs were guilty of criminal activity.[2] Defendants merely list a set of factors—a number of which must be disregarded as described above—and then focus on demonstrating that Officer Anderson's subjective determinations are irrelevant. (Dkt. No. 23 at 12, 16.)

Defendants are correct that reasonable-suspicion inquiries are generally fact-specific. Yet cases in which courts have concluded that reasonable suspicion exists always require something more specific—such as a suspect who matches a reported description or acts in a manner consistent with reported criminal activity—linking the individual to a crime. *See, e.g., United States v. Mayo,* 394 F.3d 1271, 1275 (9th Cir.2005) (officers had reasonable suspicion when officers responded to a call about "suspicious narcotics activity" and observed a sequence of events suggesting a transaction involving suspect that occurred "in a high-crime area and in front of a motel that hosted previous narcotics activity"); *Alexander v. County of Los Angeles,* 64 F.3d 1315, 1319 (9th Cir.1995) (reasonable suspicion existed when witness gave specific descriptions of suspects' clothing and vehicle); *United States v. Young,* No. 13–0149, 2014 WL 321160 at *8 (D.Nev. Jan. 29, 2014) (although a "close call," officers had reasonable suspicion when suspect matched the physical description of a black male adult wearing a white t-shirt, and the suspect was physically and temporally proximate to report of abandoned car, walking quickly, and avoid-

ing eye contact with police); *Gillis v. City and Cnty. of San Francisco,* No. 08–3871–RS, 2011 WL 4404138 (N.D.Cal.2011) (officers had reasonable suspicion when group of three individuals were in an alley two blocks from where a mugging had been reported and bore similarities to description of the three suspects); *United States v. Howell,* No. 06–260–JCC, 2007 WL 214259 (W.D.Wash.2007) (reasonable suspicion when there was temporal and geographic proximity to report of drug deal and individuals had similar clothing and were of the same race as reported suspects). Here there was no description of any suspect, no specific criminal activity identified, no suspicious behavior on the part of Plaintiffs, and only a general sense that Plaintiffs' clothing was in "disarray." To suggest that qualified immunity is nonetheless available is to suggest that qualified immunity will always protect an officer's reasonable-suspicion determinations, no matter how ill-founded. *See Torres,* 648 F.3d at 1129 (test of whether right is clearly established cannot be so narrow that qualified immunity is transformed into absolute immunity).

■■■ Even assuming that Officer Anderson had an unarticulated gut instinct that Plaintiffs had assaulted some unidentified individual—although there is no suggestion that he did or reasonably could have—this suspicion alone would not have sufficed. As the Ninth Circuit has written:

**2.** Although an officer's subjective intentions are irrelevant in determining whether a stop was objectively reasonable, even Officer Anderson did not think he had a basis for suspecting them of criminal activity; he simply wanted to "talk with them and investigate what happened and their involvement and if they knew anything regarding the fight that happened nearby." (Anderson Dep. 59:2–5 (Dkt. No. 18 Ex. 1 at 18).) Similarly irrele-

vant is Officer Anderson's subjective belief that he could stop Plaintiffs because they theoretically might have committed property crimes. (Anderson Dep. 38:5–11, 40:17–24 (Dkt. No. 18, Ex. 1 at 13.)) And although Anderson expressed concern for their safety in his deposition (Anderson Dep. 59:6–12 (Dkt. No. 18 Ex. 1 at 18)), Defendants do not suggest that this justified the stop.

If there is one irreducible minimum in our Fourth Amendment jurisprudence, it is that a police officer may not detain an individual simply on the basis of suspicion in the air. No matter how peculiar, abrasive, unruly or distasteful a person's conduct may be, it cannot justify a police stop unless it suggests that some specific crime has been, or is about to be, committed, or that there is an imminent danger to persons or property.

*Duran*, 904 F.2d at 1378.

Plaintiffs' detention does not implicate the tangled factual web of reasonable-suspicion calculations. Instead, it reflects a fundamental misunderstanding about the limits of a police officer's ability to bring the full force of the law to bear upon a person who is not reasonably suspected of being involved in criminal activity.

### E. Motion to Strike

Defendants move to strike a court reporter's transcript on the basis that it is inadmissible hearsay. (Dkt. No. 23 at 2 n. 2.) The portion of the transcript to which Defendants object had no relevance in this Court's decision so the Court declines to strike the transcript.

### III. CONCLUSION

Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS Plaintiffs' motion (Dkt. No. 17) and DENIES Defendants' cross-motion (Dkt. No. 23) for the reasons explained herein.